**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2019

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**
WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

August 6, 2019

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court for the Southern
District of New York
40 Foley Square
New York, NY 10007

*Allianz Global Investors GmbH, et al. v. Bank of America Corporation, et al.*, 1:18-cv-10364

Dear Judge Schofield:

    We write in response to the JPMorgan Defendants' August 1, 2019 letter (ECF 249) seeking to compel Plaintiffs to serve almost 1,300 separately signed responses to identical interrogatories.  JPM's request should be denied because Plaintiffs have already agreed to address all but one of JPM's complaints, and its request for damages calculations before initial disclosures have been served by Defendants is patently unreasonable.  Regrettably, this is just the latest example of Defendants viewing discovery as a tool to badger and harass.

    ***The request for 1,300 separate interrogatory responses should be denied as unreasonable and burdensome.***  JPM served almost 1,300 separate sets of identical interrogatories, even though JPM knows that the overwhelming majority of Plaintiffs are affiliated funds.  Plaintiffs timely served objections and responses in a separate document for each Plaintiff group.  Such responses, among other things, incorporate long lists of key FX traders and other personnel, and reference numerous organization charts that identify personnel involved in Plaintiffs' FX trading.  These personnel lists—sometimes spanning over 100 names—identify the individual's name, title, employer, and employment status, to the extent this information is reasonably available.  The responses also identify entities that may possess relevant documents outside Plaintiffs' custody or control.  Defendants thus already know, among other things, Plaintiffs' key personnel involved in FX trading during the relevant period.

    JPM had made plain at the outset that its goal was to maximize the harassment value of the interrogatories, insisting in its cover email that "each Plaintiff" should provide a separately "sworn verification."  But during the subsequent conferrals, it provided no justification for that demand, particularly in light of Plaintiffs' repeated offers to amend in other ways instead.

    JPM claimed it needed individual certifications to tie each disclosed individual and document custodian to a particular Plaintiff entity.  Despite doubting the proportionality of the request to the needs of the case and reserving that objection, Plaintiffs offered to supplement

their responses to "indicate (a) which individuals may have knowledge pertaining to each specific Plaintiff, and (b) which entities may have documents pertaining to each specific Plaintiff's FX trading, to the extent such information can be obtained via a reasonable investigation." July 26, 2019 email from A. Alden to J. Kolbe. In short, Plaintiffs made clear that they would seek "to provide the JPMorgan Defendants with the same information as Plaintiffs would provide were they to engage in the transparently 'make work' exercise of serving 1,300 separate responses." *Id.* When asked whether there was any needed information that Plaintiffs' offer would not address, JPM could not identify any. It still fails to do so.

Thus, this supposed discovery dispute is a classic example of elevating form over substance. Which is to say, there is nothing of substance because Plaintiffs have offered to provide information specific to each Plaintiff where information is reasonably available. And as for the form, the law sensibly recognizes Plaintiffs' right to avoid the pointless exercise of preparing and serving 1,300 separate responses and supporting affidavits. *See* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2172 (3d ed. 2008) ("If identical interrogatories are submitted to several parties, they may designate one of their number to answer for all of them, provided that they agree on the record that all are bound by the answers.").[1] In the cases JPM relies upon, the proffered responses failed to make clear which information pertained to each answering party. In contrast, in this case, Plaintiffs have offered to address this issue with amended responses. It is premature at best to simply presume, without any explanation, that amendments in the proffered form will be insufficiently particular. And Federal Rule 33(d) allows Plaintiffs to refer to business records in certain circumstances as well. Plaintiffs' reservation of their right to do so where appropriate, *see* July 26, 2019 email from A. Alden to J. Kolbe, is in no way improperly "shifting the burden to Defendants," as JPM claims.

***JPM's request that each of 1,300 plaintiffs provide a damages computation before initial disclosures is equally harassing and meritless.*** JPM's request that each Plaintiff separately provide a computation of damages at this nascent stage of the case is an equally obvious attempt to impose extraordinary burden with no proportional benefit to this case. Indeed, on its face it would be a strange state of affairs were Plaintiffs required to provide damages calculations before the parties even exchange initial disclosures.

*First*, because motions to dismiss have not been decided, Plaintiffs do not even know the claims, time periods, and Defendants with respect to which damages will ultimately be sought.

*Second*, Plaintiffs do not yet have many categories of damages-related discovery. Many foreign Defendants will not provide *any documents* until motions to dismiss are decided; all Defendants have refused even to gather pre-2008 discovery until motions to dismiss are decided; and most Defendants did not produce post-2008 trade data necessary to calculate damages until late July. Plaintiffs were thus entitled to answer, honestly and reasonably, they currently believe the request is premature in light of, among other things, these limitations on their knowledge.[2]

---

[1] *See also Jobe O. v. Pataki*, 2007 WL 844707, at *3 (S.D.N.Y. Mar. 15, 2007) (accord); *Shirley v. City of Eastpointe*, 2012 WL 1560655, at *2 (E.D. Mich. May 3, 2012) (same).

[2] *See generally, e.g.*, Fed. R. Civ. P. 33(b)(1)(B) (responding party only to "furnish the information available to" it); *Riley v. United Air Lines, Inc.*, 32 F.R.D. 230, 233 (S.D.N.Y. 1962)

*Third*, in an antitrust case of this size and complexity, involving multiple types of complex financial instruments, Plaintiffs cannot provide a computation of damages without the aid of an expert.  Nothing in the Federal Rules, Local Rules, this Court's Case Management Order, or JPM's cited cases requires Plaintiffs to provide expert analysis during the pleading stage.  To the contrary, numerous courts have denied motions where they similarly sought to jump the parties prematurely into expert discovery.[3]  Tellingly, JPM has failed to cite a single antitrust case—let alone one of this size and complexity—where plaintiffs were required to provide damages calculations before expert discovery.

*Finally*, JPM argues—for the first time in its letter-motion, not during the conferral process—that Plaintiffs should disclose any damages estimates formulated "with the help of their experts, before rejecting the *FOREX* settlement."  But any such estimates would clearly be protected attorney work-product. Fed. R. Civ. P. 26(b)(3)(A) & (4)(D) ("facts known or opinions held by" non-testifying experts discoverable only upon a showing of "exceptional circumstances under which it is impracticable for the [requesting] party to obtain facts or opinions on the same subject by other means.").[4]  And hypothesizing as to what (protected) analyses might have been done as part of Plaintiffs' (protected) litigation strategy analyses and (protected) attorney-client communications does not solve the more fundamental problem with the timing of this interrogatory:  the severely burdensome request to provide 1,300 individualized calculations cannot be proportional to the needs of the case when any such calculations would necessarily be highly preliminary for all the reasons discussed above.

---

(holding "[i]f no one under [a party's] control now has any information from any source as to a particular interrogatory," it "may so state under oath, and such a statement shall be a sufficient answer.").

[3] *See, e.g.*, *New Haven Temple SDA Church v. Consol. Edison Corp.*, 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (holding interrogatory was premature because defendant was not entitled to "a detailed summary of plaintiff's proof, particularly to the extent that calculations of an expert may be required"); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 541 (N.D. Ill. 2005) (denying motion to compel party to disclose damage theories before expert discovery); *Reed v. Friedman Mgt. Corp.*, 2015 WL 5008629, at *6 (S.D.N.Y. Aug. 24, 2015) (similar); *Philadelphia Cervical Collar v. Jerome Med.*, 2001 WL 392895, at *1 (E.D. Pa. April 17, 2001) (accord).  Notably, unlike here, in each of the cases cited by JPM, any motions to dismiss had been decided and the plaintiffs had significant discovery from the defendants.

[4] *See also Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 1994 WL 177785, at *1 (S.D.N.Y. May 6, 1994) ("a non-testifying expert is generally immune from discovery"); 8A Charles Alan Wright, *et al.*, Federal Practice and Procedure, § 2032 (3d ed.) ("Allowing routine discovery as to [non-testifying consultants] would tend to deter thorough preparation of the case and reward those whose adversaries were most enterprising.").

For substantially the reasons stated in Plaintiffs' letter, it is ORDERED that by August 21, 2019, Plaintiffs shall make concerted and diligent efforts to supplement their interrogatory responses, indicating, as comprehensively as possible, (1) which individuals have knowledge pertaining to each specific Plaintiff and (2) which entities have documents pertaining to each specific Plaintiff.  On August 28, 2019, the parties shall file a joint letter in which Plaintiffs shall explain, in detail, their efforts to supplement their responses, and the JPMorgan Defendants shall advise whether the supplemented responses are sufficient.  Regarding damages calculations, it is ORDERED that Plaintiffs shall make reasonable efforts to comply with Local Rule 33.3(a), with the understanding that Plaintiffs may update or supplement their responses at a later date.  Plaintiffs need not provide a separate response for each Plaintiff or provide any privileged information.

Dated: August 7, 2019
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

4

Respectfully submitted,

*/s/ Daniel L. Brockett*

Daniel L. Brockett