# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717–2900

Tibor L. Nagy, Jr.
tibor@dnfllp.com

**VIA ECF**

June 15, 2020

The Hon. Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    Allianz et al v. Bank of America Corp. et al., 18-cv-10364-LGS

Dear Judge Schofield,

    For the reasons stated in Defendants' section of the parties' joint letter on June 12, 2020, Defendants respectfully request leave to submit the chart attached as Exhibit 1 that "lists Defendants' review guidelines and identifies what categories of documents Plaintiffs seek to withhold." ECF 434 at 2. The left column identifies each of the 26 guidelines for relevant documents that Defendants believe should be produced if they are returned by Plaintiffs' searches for the "sampling" production. ECF 372 at 2. We requested that Plaintiffs fill in their positions for each guideline in the right column, but they refused to do so. The right column therefore sets forth Defendants' best understanding of Plaintiffs' positions, with quotations wherever possible from the parties' meet-and-confer correspondence. As Your Honor will see, in many instances, Plaintiffs have not plainly stated whether they will produce the requested documents or not. Instead, they have tried to recast Defendants' categories in their own words without disclosing what will be "withheld from production." ECF 393 at 1. Therefore, Defendants have identified in yellow highlighting our own understanding of the categories of documents that Plaintiffs seek to withhold. We respectfully seek leave for Your Honor to consider the attached chart, which we believe will aid the Court in ruling on the disputes outlined in the June 12, 2020 letter.

        Respectfully submitted,

        By: /s/ Tibor L. Nagy, Jr.
        Tibor L. Nagy, Jr.
        DONTZIN NAGY & FLEISSIG LLP
        980 Madison Avenue, 2nd Floor
        New York, New York 10075
        212-717-2900
        tibor@dnfllp.com

        Counsel for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC

        cc:  All counsel of record (via ECF)

**EXHIBIT 1**

| | **Ds' GUIDELINES**<br>**Ps should produce all documents and communications related to the topics below** | **Ps' POSITION** |
|---|---|---|
| 1. | Guidelines or policies regarding FX trading[1] | "Plaintiffs' guidelines, policies, and strategies concerning FX trading (including trade allocation and currency risk management). Plaintiffs will also produce communications in the same family as such policies." ==Plaintiffs do not agree to produce communications discussing or applying FX policies unless the policies are attached "in the same family."==[2] |
| 2. | Plaintiffs' FX trading strategies, risk management strategies, or hedging strategies | "Plaintiffs have agreed to produce documents showing their FX trading, currency and FX hedging strategies during the relevant period, and communications discussing such strategies, in the context of the sampling production."<br><br>==Plaintiffs appear to be limiting their production to discussions of formal "strategy" documents rather than general discussions of FX trading or risk management strategies in the text of communications.== |
| 3. | Analysis or evaluation of Plaintiffs' FX trading, including analysis of FX trading with a Defendant or any other market participant, including but not limited to discussions of trading analytics reports (TARs) or related information, or any similar analyses | "Documents analyzing or evaluating aspects of Plaintiffs' FX trading during the relevant period and communications discussing such documents." "Plaintiffs will also produce communications that contain or discuss analysis or evaluation of their FX trading during the relevant period."<br><br>==Plaintiffs appear to be limiting their production to discussions of formal analyses, and excluding communications including ad-hoc analysis of FX trading generally or individual trades in the text of the communications.== |
| 4. | Spread matrices and information about spread matrices (and similar documents – *e.g.*, grids, pricing compilations, etc.) | "Spread matrices and similar documents compiling information about FX spreads or prices." "Plaintiffs will produce communications containing or discussing spread matrices and similar documents compiling information about FX spreads or prices."<br><br>==Plaintiffs do not agree to produce communications containing or discussing FX spreads if Plaintiffs decide they are merely "administrative."== |

---

[1] For each guideline in this column, Defendants believe Plaintiffs should produce all documents and communications related to the listed topic, including electronic communications and attachments to electronic communications related to such topics.

[2] Quotations in this column are from the parties' meet and confer correspondence. Highlighted text shows Defendants' understanding of the categories of documents Plaintiffs seek to withhold.

|  | **Ds' Guidelines**<br>**Ps should produce all documents and communications related to the topics below** | **Ps' Position** |
|---|---|---|
| 5. | Marketing materials or presentations from any dealer/counterparty to any Plaintiff regarding FX | "Marketing and promotional materials and presentations regarding FX provided to Plaintiffs by Defendants."<br><br>Plaintiffs do not agree to produce FX marketing or promotional materials from third parties. |
| 6. | Agendas, summaries, meeting minutes, and recaps for in-person meetings with any dealer or counterparty regarding FX | "Plaintiffs stand on their objections. The 'guideline' is also overbroad and vague." |
| 7. | The price and/or spread for FX transactions (including requests for quotation) and any discussion about these topics | Agreed, except: "Plaintiffs intend to withhold internal communications and communications with custodians, investments advisors, administrators, and consultants if they relate solely to non-Defendant dealers." |
| 8. | Plaintiffs' acceptance or rejection of the price of an FX transaction and any discussion about this topic | Agreed, except: "Plaintiffs intend to withhold internal communications and communications with custodians, investments advisors, administrators, and consultants if they relate solely to non-Defendant dealers." |
| 9. | Negotiations related to FX transactions | "Plaintiffs clarify that they will produce non-privileged, internal communications and discussions of high-level negotiations between Plaintiffs and Defendants about prices for Plaintiffs' FX transactions, if any."<br><br>Plaintiffs have not confirmed whether they will produce communications about how a Defendant can obtain more volume from Plaintiffs or negotiations concerning competition for Plaintiffs' FX business based on non-price factors (*e.g.*, FX research). |
| 10. | Plaintiffs' comparison of any prices and/or spreads for FX transactions and any discussion about these topics | Agreed, except "To the extent such communications relate only to non-Defendant dealers, Plaintiffs do not intend to produce them." |
| 11. | Reports, studies, analyses, complaints, or concerns about dealers'/counterparties' FX trading, including any alleged manipulation of FX pricing or benchmarks | "Reports, studies, analyses, complaints, suspicions, or concerns about Defendants' FX trading, including any alleged manipulation of FX pricing or benchmarks."<br><br>Plaintiffs do not agree to produce "discussions about these topics," and "Plaintiffs . . . do not see the relevance of reports, studies, analyses, complaints, suspicions or concerns about third parties." |

| | **Ds' Guidelines** **Ps should produce all documents and communications related to the topics below** | **Ps' Position** |
|---|---|---|
| 12. | Competition in the FX market, including (but not limited to) any discussions about a Plaintiff's ability to obtain a narrower spread and/or higher/lower price | "Plaintiffs have also already agreed to produce internal communications and communications with custodians, investments advisors, administrators, and consultants concerning prices, quotes, and spreads for Plaintiffs' FX transactions with Defendants during the relevant period." <br><br>Plaintiffs do not agree to produce "internal communications showing a Plaintiff's ability to compel a Defendant to offer lower spreads." |
| 13. | Analysis and/or comparison of Defendants' FX services, including, but not limited to, pricing, credit, research, and trade strategy | "Plaintiffs do not intend to produce documents pertaining to this 'guideline' beyond the categories it has already agreed to produce." |
| 14. | The mechanics of how FX benchmark rates are set, the advantages or disadvantages of trading at a FX benchmark rate, any analysis of FX benchmark rates, and any discussion regarding why Plaintiffs traded at benchmark rates | "Plaintiffs will produce only documents and communications containing research or analysis of benchmark rates, unless such documents and communications fall within Plaintiffs' other agreements." |
| 15. | Organizational structure of Plaintiffs' business units responsible for FX trading | "Plaintiffs will produce any non-privileged documents captured by the custodial searches that show the organizational structure of Plaintiffs' business units responsible for FX trading." |
| 16. | The allocation or aggregation of FX trades among multiple Plaintiffs or Plaintiffs and other entities | "Policies and procedures concerning FX trade allocation or aggregation and discussions of such policies." <br><br>Plaintiffs do not agree to produce communications discussing allocation or aggregation of FX trades in practice. |
| 17. | Plaintiffs' profits or losses (P&L) related to FX trading | "Reports or analyses concerning P&L on Plaintiffs' FX trading or currency strategies and communications attaching and/or discussing such documents." <br><br>Plaintiffs do not agree to produce communications discussing FX P&L. |

|  | Ds' GUIDELINES<br>Ps should produce all documents and communications related to the topics below | Ps' POSITION |
|---|---|---|
| 18. | Information about any dealer/counterparty's order book, including specific FX transactions that Defendant has entered into or expects to enter into. Discussions or information would include the currency pair, the amount of the transaction, the direction of transaction, whether and at what levels the counterparty plans to buy or sell (and why), the location of the counterparty, and/or whether the counterparty is a successful trader | "Plaintiffs . . . do not intend to produce documents pertaining to this 'guideline' unless captured by one of Plaintiffs' other agreements." |
| 19. | Market color or similar information sought and/or received from and/or provided to dealers/counterparties, including information received from any dealer/counterparty about market activity by other participants, *e.g.*, information about orders or trades by third parties or another customer of a dealer, and any discussion about this topic | "Plaintiffs . . . do not intend to produce documents pertaining to this 'guideline' unless captured by one of Plaintiffs' other agreements." |
| 20. | (i) Whether, when, and under what circumstances Plaintiffs used any ECN or other trading platform in connection with FX transactions, (ii) any evaluation or comparison among or between any ECNs, any voice desk, or any other trading platform, including any comparison of prices or spreads between such trading venues, or any desk manuals, guidelines or instructions regarding any of the foregoing, and (iii) any algorithmic FX trading or evaluation of FX pricing feeds from different FX trading platforms | To the extent documents captured by other "guidelines" discuss ECNs, "Plaintiffs will not withhold them," but otherwise "Plaintiffs do not intend to produce documents pertaining to this 'guideline'." |
| 21. | The type of FX transaction (*e.g.*, benchmark trade, resting order, etc.) | "Internal communications concerning prices, quotes, and spreads for Plaintiffs' FX transactions with Defendants during the relevant period, including the type of FX transaction, to the extent encompassed by the communications." |
| 22. | The location of the FX trader for Plaintiffs and the location of the FX trader for the counterparty (*e.g.*, Defendants or non-Defendant dealers) (subject to the parties' dispute set forth in ECF 404) | "Plaintiffs have agreed to produce documents sufficient to show the location of Plaintiffs' FX traders who made at-issue FX trades during the relevant period, to the extent such information can be obtained via a reasonable search" (see Plaintiffs' position in ECF 404). |

|     | **Ds' Guidelines** <br> **Ps should produce all documents and communications related to the topics below** | **Ps' Position** |
| --- | --- | --- |
| 23. | Information exchanged with Plaintiffs' affiliated or unaffiliated investment advisors, or FX Service Providers (as defined in Defendants' 30(b)(6) notice to BlackRock), regarding FX trading strategies or the pricing, allocation, or aggregation of FX transactions | "Plaintiffs are willing to produce their non-privileged communications with investment advisors, custodians, consultants, and administrators concerning prices, quotes, and spreads for Plaintiffs' FX transactions with Defendants during the relevant period," and will "produce such non-privileged communications to the extent they discuss FX trading strategies and trade allocation policies during the relevant period." |
| 24. | Information exchanged with Plaintiffs' investors regarding FX trading strategies or the pricing, allocation or aggregation of FX transactions | "Plaintiffs stand on their objections and will not produce documents pertaining to this 'guideline'." |
| 25. | Information about Defendants' multi-bank chatrooms related to FX | "Plaintiffs stand on their objections and do not agree to produce documents pertaining to this guideline unless otherwise captured by Plaintiffs' other agreements." |
| 26. | Information about Plaintiffs' multi-party chatrooms related to FX | "Plaintiffs do not intend to produce additional documents unless they fall within Plaintiffs' other agreements." |