# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2085
rzutshi@cgsh.com

THOMAS J. MOLONEY
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM

MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO

HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS
LINA BENSMAN
AROM M. ZUCKERMAN
RESIDENT PARTNERS

SANDRA M. ROCKS
JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA P. SERRA
DAVID W.S. YUDIN
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

**VIA ECF**

July 1, 2020

Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

Re:     *Allianz Global Investors GMBH, et al. v. Bank of America Corporation, et al.*, 1:18-cv-10364 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

Defendants submit this letter in further support of their request for certification of the Court's May 28, 2020 order for interlocutory appeal under 28 U.S.C. § 1292(b), *see* ECF No. 438, with respect to the question of whether the FTAIA bars foreign Plaintiffs from bringing suit under U.S. antitrust laws based on FX transactions with Defendants' U.S. desks.[1]

***The question is "controlling," and resolution in Defendants' favor "may materially advance the ultimate termination" of this action.***  This action involves nearly 600 *foreign* Plaintiffs:  These entities, according to Plaintiffs' own pleadings, are domiciled abroad and have their principal places of business abroad.  Because the Court has already dismissed claims arising from these foreign Plaintiffs' transactions with Defendants' foreign desks, as well as from their transactions with non-defendants, a decision dismissing claims arising from their transactions with Defendants' U.S. desks would eliminate these foreign Plaintiffs' claims altogether and clearly advance resolution of this litigation.  Plaintiffs raise three flawed arguments in opposition to this straightforward, logical conclusion.

First, Plaintiffs assert that "many foreign-domiciled Plaintiffs, such as BlueCrest, would [still] have live antitrust claims on those transactions where they operated domestically."  ECF No. 444 at 1.  But Plaintiffs' own pleadings contradict this eleventh-hour attempt to recast foreign Plaintiffs as "domestic" entities.  The SAC contains no allegations that any of these nearly 600 foreign Plaintiffs "operated domestically," let alone that any such domestic operations resulted in an import transaction with a Defendant.  For example, the SAC contains no allegations that BlueCrest had *any* operations in the U.S.  To the contrary, it affirmatively alleges that BlueCrest

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in ECF No. 438.

"is a global investment management firm formed under the laws of the Channel Islands, and with its principal place of business in Jersey, Channel Islands. BlueCrest served as investment manager to . . . the Plaintiff funds listed in Appendix D," *all* of which are Cayman Island corporations with no alleged U.S. operations. *See* SAC ¶¶ 46-49; SAC App. D.[2]

Second, Plaintiffs erroneously argue that "every Plaintiff would still have a live unjust enrichment claim" even if foreign Plaintiffs' antitrust claims are dismissed. ECF No. 444 at 1. Not so. Plaintiffs cannot pursue "parasitic" common-law unjust enrichment claims "premised on a violation of federal law" if their underlying federal antitrust claims fail. *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411-12 (S.D.N.Y. 2011); *see Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995) (dismissal of Sherman Act claims required dismissal of related unjust enrichment claim). Indeed, by enacting the FTAIA, Congress has preempted foreign plaintiffs from asserting state law claims based on the same conduct that the FTAIA immunizes. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) ("Congress' intent [in the FTAIA] would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5477313, at *4 (N.D. Cal. Dec. 31, 2010).[3]

Finally, Plaintiffs cannot avail themselves of the FTAIA's "domestic effects" exception. That exception applies only if the domestic effects of the transactions "proximately cause" the plaintiff's injuries—not where a transaction with a foreign plaintiff causes foreign harm. *See, e.g.*, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 175 (2004); *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014). As the Executive Branch guidelines on the FTAIA's "domestic effects" exception make clear, "a plaintiff that suffers a foreign injury that is independent of, and not proximately caused by, the conduct's effect on U.S. commerce cannot recover damages under the U.S. antitrust laws." *See* U.S. Dep't of Justice, Fed. Trade Comm'n, *Antitrust Guidelines For International Enforcement and Cooperation* 25 (2017), https://www.justice.gov/atr/internationalguidelines/download.[4]

***There are substantial grounds for differences in opinion as to whether foreign Plaintiffs' claims are barred by the FTAIA.*** In response to Defendants' position that the FTAIA's "import commerce" exception does not permit foreign Plaintiffs to pursue claims based on their transactions with Defendants' U.S. desks, Plaintiffs erect a straw-man, asserting that Defendants' arguments are highly fact-specific and rely on the fact "that the transactions were carried out digitally, rather than with the physical exchange of paper currency." ECF No. 444 at 2. While this concedes that foreign Plaintiffs' transactions did not involve the movement of goods into the U.S., it also completely misstates—and misunderstands—Defendants' argument: The "import

---

[2] Plaintiffs now seek to amend the SAC to retract their prior concession that foreign Plaintiffs will not assert claims based on transactions with Defendants' foreign desks, despite the Court's prior rulings holding that such claims are barred by the FTAIA. Although the proposed amendment should not be permitted, *see* ECF No. 432, even if it were, it still contains no allegations that foreign Plaintiffs operated, let alone were somehow injured, within the U.S.

[3] In any event, a ruling eliminating foreign Plaintiffs' antitrust claims, and consequently foreclosing any potential recovery of treble damages by those Plaintiffs, would materially advance the resolution of this litigation and satisfy the requirements of Section 1292(b). *See* ECF No. 438 at 1 (citing cases).

[4] Plaintiffs also invoke alternative arguments based on "waiver" and "estoppel." ECF No. 444 at 1-2. To the extent this is a reference to the fact that a few Defendants entered into plea agreements that make the unsurprising statement that their conduct generally (including transactions with U.S.-domiciled counterparties) affected "U.S. import trade and commerce," *see* ECF No. 282 at 29 n.28, such statements say nothing about whether claims based on transactions between *foreign* Plaintiffs and Defendants' U.S. desks are barred by the FTAIA.

commerce" exception must be applied in a manner consistent with the FTAIA's fundamental goal of "releas[ing] domestic (and foreign) anticompetitive conduct from Sherman Act constraints when that conduct causes foreign harm."  ECF No. 438 at 2 (quoting *Empagran S.A.*, 542 U.S. at 166).  Foreign Plaintiffs do not dispute that the claims at issue here seek damages based on foreign harm.  Nor can Plaintiffs plausibly deny that these transactions involve Defendants exporting FX services in exchange for cash payments, as that is how the SAC itself describes the transactions:

> [D]ealers (also called 'market makers') exist to provide liquidity and to ensure there is always a counterparty for any transaction.  To initiate an FX OTC transaction, a customer contacts a dealer indicating the currency and quantity she wishes to trade, and inquires as to the price.  The dealer states the prices at which it is willing to buy (the 'bid') and sell (the 'ask').  The customer then decides whether to buy, sell, or pass.  The dealer is compensated *for its services* by way of the gap between the quoted buy and sell prices, or the 'bid/ask spread.'

SAC ¶ 249 (emphasis added).  Plaintiffs' assertion that "Defendants were not accountants, attorneys, or financial advisors providing a service to a fiduciary operating abroad," ECF No. 444 at 2, is irrelevant:  A fiduciary relationship is not a requirement for exporting a service.[5]

Plaintiffs also fail to rebut the substantial authority cited by Defendants—including *Turicentro* and *Motorola*, two leading Courts of Appeals decisions—establishing that the "import commerce" exception is intended to protect consumers who are overcharged on domestic purchases of U.S. imports, not consumers who are overcharged on *foreign* purchases of U.S. exports.  *See* ECF No. 438 at 2.[6]  Plaintiffs attempt to distinguish these cases by arguing that although the foreign Plaintiffs here are consumers of a U.S. export, Defendants here are importers of "money."  ECF No. 444 at 2.  But even if that were true—and it is not, *see* ECF No. 438 at 3, n.3—it misunderstands Defendants' argument.  *Turicentro* makes clear that the "import commerce" exception applies only when anticompetitive conduct is "*directed at*" the import of goods or services into the U.S.  303 F.3d 293, 303 (3d Cir. 2002) (emphasis added).  Here, by contrast, the alleged overcharges at issue were directed at and applied to the "export" leg of the transactions at issue, not the purported "import" leg.  And *Motorola* makes clear that a plaintiff who sends goods or services into the U.S. cannot circumvent the FTAIA's clear bar on claims based on anticompetitive conduct directed at an overseas client which results in foreign harm.  775 F.3d 816, 818 (7th Cir. 2015).[7]  Plaintiffs' overly broad interpretation of the "import commerce" exception would thwart Congress's express goal of granting U.S. exporters the same immunity from U.S. antitrust laws that their foreign competitors enjoy in dealings with customers abroad.

For these reasons and those in ECF No. 438, Defendants' request should be granted.

---

[5] Plaintiffs also falsely contend that "Defendants previously argued that (a) the FTAIA looks to the place of operation, not domicile, and (b) having operations on either side of the transaction suffices."  ECF No. 444 at 2.  As to the former, Defendants have made no such argument, and Plaintiffs do not cite any support.  As to the latter, Plaintiffs cite to an argument made by one Defendant in a different case that the FTAIA barred those plaintiffs' claims based on "wholly foreign" transactions, a proposition consistent with this Court's Order and with Defendants' position here.  *See Chan Ah Wah v. HSBC N. Am. Holdings, Inc.*, No. 15-cv-8974-9 (S.D.N.Y. Nov. 30, 2016), ECF No. 128 at 8.

[6] In response to the extensive support cited by Defendants regarding the explicit Congressional intent to bar antitrust claims by foreign Plaintiffs, *see* ECF No. 438 at 2-3, Plaintiffs pluck a quote from the legislative history that does not even address the "import commerce" exception.  *See* ECF No. 444 at 3 (quoting H.R. Rep. 97-686 (2010), at 10).

[7] Plaintiffs also argue that out-of-Circuit cases do not suffice, but these leading appellate cases reflect "the strength of the arguments in opposition to the challenged ruling."  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Rishi Zutshi
Thomas J. Moloney
George S. Cary
Victor Hou
Rishi Zutshi
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999
tmoloney@cgsh.com
gcary@cgsh.com
vhou@cgsh.com
rzutshi@cgsh.com

*Attorneys for Defendants The Goldman Sachs
Group, Inc. and Goldman Sachs & Co. LLC*

CC: Counsel for all parties via ECF