**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

September 4, 2020

<u>VIA ECF</u>

The Honorable Lorna G. Schofield
United States District Court for the Southern
District of New York
40 Foley Square
New York, NY 10007

Re:   <u>*Allianz Global Investors GmbH, et al. v. Bank of America Corporation, et al.*, 1:18-cv-
10364</u>

Dear Judge Schofield:

On behalf of Plaintiffs, we write to oppose the request of MUFG and RBC for a briefing
schedule on purported "motions to dismiss."  Dkt. 506.  The request should be denied because
the grounds offered for the motions do not address the Court's prior rulings on the very same
issues, and because the requests are often indistinguishable from the (denied) requests recently
made by the other Defendants.  The Court already spent significant judicial resources
entertaining Defendants' motions to dismiss, even though those motions did little more than seek
reconsideration of the Court's rulings in *FOREX*.  The Court should not spend even more scarce
and costly judicial resources entertaining what amounts to belated requests to reconsider the
Court's rulings in *this* case.

***All of the proposed arguments are barred by the law-of-the-case doctrine and Rule 12(g).***  Not
a single argument the requesting Defendants seek to brief goes to whether the *amended MUFG
and RBC* allegations meet the pleading standards this Court *already established*.  Rather, these
Defendants seek to act as scouts for all Defendants, arguing how this Court *should have* applied
pre-existing law to pre-existing allegations common to all Defendants.  This is improper.  The
law-of-the-case doctrine bars litigation of issues that were already expressly or impliedly
decided.  *E.g.*, *Fogel v. Chestnutt*, 668 F.2d 100, 108-09 (2d Cir. 1981).  And Rule 12(g) bars
litigants from raising defenses they could have raised in prior motions to dismiss.  *E.g.*,
*Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1078 (E.D. Pa. 2017) (denying motion to
dismiss amended complaint where arguments went "solely to allegations that appeared" in prior
complaint); *Redwood v. Piland*, 2005 WL 8164631, at *2 (C.D. Ill. Jan. 24, 2005) (same).

**quinn emanuel urquhart & sullivan, llp**

The complaint in this case was amended for only one reason—to bring the conspiracy allegations against MUFG Bank Ltd. and the Royal Bank of Canada in line with those the Court deemed sufficient as to the other foreign Defendants. The proper scope of any motion to dismiss would be to argue only that the allegations made against MUFG Bank Ltd. and the Royal Bank of Canada are qualitatively or quantitatively different from those the Court deemed sufficient for other Defendants. But that is not the grounds on which these banks seek to move.

**Defendants do <u>not</u> request to brief whether the amended MUFG and RBC allegations meet this Court's personal jurisdiction test.** Defendants have fully briefed their view of what is needed to establish personal jurisdiction, including under the Second Circuit's decision in *Charles Schwab Corp v. Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2008). Dkt. 238 at 1. After fully considering Defendants' arguments, the Court issued an extensive, thoughtful order largely rejecting them. Dkt. 389 ("*Allianz* PJ Order"). It is the law of the case that "the Complaint contains plausible allegations of unlawful conduct" and "contains extensive, specific allegations that tie this collusive activity to the United States." *Id.* at 7-8. It is the law of the case that what distinguished MUFG Bank Ltd. and the Royal Bank of Canada in the prior complaint was the comparative lack of allegations that these two entities specifically "participated in the conspiracy." *Id.* at 12. The Third Amended Complaint directly addresses that issue—indeed, it was the *only* reason the amendment was filed. It confirms these two entities specifically were subject to governmental investigations. *See, e.g.*, Dkt. 482 ("TAC") ¶¶ 102, 206. It confirms these two entities specifically were involved in many conspiratorial chats, including with traders in New York. *See, e.g.*, *id.* ¶¶ 99, 203, 773-857. The added entity-specific allegations are indistinguishable from those found sufficient as to other banks. *See Allianz* PJ Order at 9-10; Dkts. 415, 437 (motion to amend, summarizing allegations).

The requesting Defendants do not even try to argue against these points. There is no discussion of the Court's jurisdictional order; it is not even cited. There is no attempt to compare or contrast the allegations now made in the Third Amended Complaint against MUFG Bank Ltd. and the Royal Bank of Canada against those made against them in the Second Amended Complaint, or to those found sufficient as to the other foreign Defendants. The only discussion of the *amended* allegations—as opposed to pre-existing allegations—is buried in a footnote, where the requesting Defendants refer to forthcoming declarations about the 'true' location of their own traders. Dkt. 506 at 2 n.6. But Judge Aaron and this Court have both concluded that such declarations did not render the amendment futile. This Court has also ruled it is improper to use declarations to try to contradict jurisdictional allegations. Dkts. 397, 403. And, tellingly, the requesting Defendants do not argue that the absence of *their own* traders in New York precludes the exercise of personal jurisdiction. Rather, under the law of the case, for personal jurisdiction purposes it is both plausible, and sufficient, that these banks are alleged to have knowingly chatted with traders *at other banks* who were in the United States. *Allianz* PJ Order at 10.

In sum, the Third Amended Complaint added allegations only to put the case against MUFG Bank Ltd. and the Royal Bank of Canada on par with the case against the other foreign Defendants. The sufficiency of those new allegations under *Allianz* is not being questioned. This alone justifies a rejection of Defendants' request for a full briefing schedule.

***The request to re-brief the 'specific transaction' issue by way of Schwab should be denied.***
The requesting Defendants argue that all claims against them—and, by extension, all foreign
Defendants—need to be dismissed pursuant to *Schwab* because Plaintiffs do not allege a "single
transaction" impacted by the conspiracy.  This argument is barred by Rule 15 because the
relevant allegations are common to the current and prior complaints.  This argument is also
barred by the law-of-the-case doctrine because the Court heard arguments on *Schwab* already.
*E.g.*, Dkt. 238 at 1.  And the Court has heard arguments about the supposed need for greater
specificity *ad nauseam*.  *See* Dkt. 236 at 15 ("Not a single Plaintiff alleges the date, location,
instrument, currency, direction (buy vs. sell), counterparty, or price of a specific transaction
allegedly impacted by any of Defendants' purported misconduct."); *see also, e.g., id.* at 1, 5, 7, 9,
10, 11, 12, 13, 16, 19, 20, 21, 29, 43.  This Court has both expressly and impliedly rejected
Defendants' repeated attempts to demand more specificity at the pleading stage.  *See, e.g.*, Dkt.
406 ("*Allianz* Merits Order") at 6.  Indeed, the Court even recently rejected the request by the
*other* Defendants to re-argue the specificity point.  Dkt. 499 at 11.

The requesting Defendants also seek to brief the notion that *if* their reconsideration arguments as
to *Schwab* are accepted, *then* dismissal is required because all other jurisdictional doctrines
supposedly require each Plaintiff to have been in privity with MUFG Bank Ltd. and the Royal
Bank of Canada, specifically.  This is an incorrect statement of law, for many reasons.[1]  But even
on its face the Court does not need briefing on this issue.  Defendants admit that this argument is
only relevant if the Court reverses itself as to *Schwab*—which, as above, it should not do.

***The request to re-brief the 'specific transaction' issue by way of the FTAIA should be denied.***
The requesting Defendants also ask to brief the issue of whether Plaintiffs need greater
specificity, this time under the auspices of the FTAIA.  But, again, none of the relevant
allegations changed in amending the complaint.  And, again, this Court already heard, and
rejected, Defendants' FTAIA arguments.  *See* Dkt. 236 at 32; *Allianz* Merits Order at 16-19.
Indeed, the other Defendants recently requested the right to brief the question of whether "the
TAC . . . fails to plead . . . that any FTAIA exception applies."  Dkt. 491 at 2.  The Court rejected
the request, because while "[s]pecifics regarding individual transactions that occurred may be
sought in discovery," their absence does not create a pleading issue.  Dkt. 499 at 11.

***The request to re-brief the 'specific transaction' issue by way of the privity requirement should
be denied.***  The requesting Defendants seek to brief the issue of whether the fact that appendices
to the Complaint sometimes have blank cells means 159 Plaintiffs need be dismissed.  But other
than removing voluntarily dismissed Plaintiffs, the appendices are the same in the prior and
current complaints—including notations where certain Plaintiffs admitted to not having
confirmed the "granularity" of their transactional data.  *Compare* Dkt. 481-1 (TAC Appendix A)
at A-1 *with* Dkt. 22-1 (SAC Appendix A) at A-1.[2]  The Court, after hearing Defendants'
arguments about the supposed importance of privity and the pleading specifics, nonetheless

---

[1]  Almost two years before *Schwab* was decided, this Court established jurisdictional standards that did not
turn on each plaintiff being in privity with each defendant.  *See In re Foreign Exch. Benchmark Rates Antitrust
Litig.*, 2016 WL 1268267, at *5 (S.D.N.Y. Mar. 31, 2016).  The requesting Defendants seek to distinguish *FOREX*
on the grounds it was a class action, but Defendants already briefed that issue as well.  *See, e.g.*, Dkt. 236 at 16.

[2]  Even without the benefit of specific allegations, it is plausible all Plaintiffs had a transaction with a
Defendant, given Defendants' dominant market share.  *See, e.g.*, TAC ¶ 263.

dismissed *claims* rather than *Plaintiffs*.  *See, e.g.*, *Allianz* Merits Order at 2.  Just as with the FTAIA issue, Dkt. 499 at 11, no briefing is needed; the details of each Plaintiff's transactions will come out in discovery (they already are).

**The request to brief the dismissal of RBCCM should be denied as moot.**  RBC Capital Markets LLC was found to be a proper defendant in *FOREX*.  It is thus not surprising that it was included here as well.  When other banks approached Plaintiffs about erroneously-included affiliates, voluntary dismissals were granted as long as it was made clear what entity should stay in the case.  By contrast, RBC has played a shell game, with the Royal Bank of Canada and RBC Capital Markets LLC *both* seeking dismissal by pointing the finger at the other.  If Plaintiffs' arguments above as to the sufficiency of the allegations against the Royal Bank of Canada are accepted, Plaintiffs would expect renewed conferrals over the voluntary dismissal of RBC Capital Markets LLC to resolve this issue without any need for motion practice.

**The request to re-brief the statute of limitations issue should be denied.**  The Royal Bank of Canada seeks to brief the issue of whether being on inquiry notice as to benchmark manipulation is the same as being on inquiry notice as to bid-ask spread manipulation.  But this argument is barred by Rule 15 as it turns on pre-existing facts—indeed, the proffered argument appears almost verbatim in Defendants' prior brief.  *Compare* Dkt. 506 at 3 *with* Dkt. 304 at 12 n.15.  It is also barred by the law-of-the-case doctrine because the Court expressly rejected the argument that there should be a single start-date for inquiry notice.  *Allianz* Merits Order at 23 ("Defendants argue that the Bloomberg article put Plaintiffs on inquiry notice of Defendants' alleged manipulation of the spreads because Plaintiffs allege a single conspiracy, not two separate conspiracies.  This argument is unavailing.").

**Finally, the request to brief the 'duplicative' nature of the unjust enrichment claim should also be denied.**  The requesting Defendants seek to brief the question of whether Plaintiffs' unjust enrichment claims are duplicative their antitrust claims.  Dkt. 506 at 3.  But the nature of the claims has not changed, and thus Rule 12(g) bars this argument as well.  Even if the Court were to entertain this argument, full briefing is not required to resolve it.  Defendants cite two cases finding *non-antitrust* claims to be so clearly duplicative with unjust enrichment claims that, on the specific facts of those cases, dismissal was appropriate.[3]  By contrast here, it cannot be said the causes of action will perfectly overlap for all the millions of trades at issue.  For instance, Defendants likely will argue that some of their manipulative acts were done 'unilaterally,' and then further argue that means they cannot be part of the antitrust claim.  Plaintiffs disagree, but the Court need not resolve this now.  Rather, because it cannot be said that the claims will always be perfectly co-extensive, "while a plaintiff cannot obtain a double recovery under the [the antitrust laws] and state unjust enrichment law, there is no bar to pleading both claims simultaneously."  *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 406-07 (S.D.N.Y. 2010); *see also In re Credit Default Swaps Antitrust Litig.*, 2014 WL 4379112, at *17-18 (S.D.N.Y. Sept. 4, 2014) (collecting cases).

---

[3]  *See Price v. L'Oréal USA, Inc.*, 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) (discussing contract and tort claims in a false-marketing case); *Corsello v. Verizon N.Y.*, 18 N.Y.3d 777 (2012) (discussing inverse-condemnation and trespass claims in a case about the attachment of "terminal boxes" to plaintiff's building).

Respectfully submitted,

Daniel L. Brockett