**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

September 29, 2020

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S EMAIL ADDRESS
**danbrockett@quinnemanuel.com**

<u>VIA ECF</u>

The Honorable Stewart D. Aaron
United States Courthouse
500 Pearl Street
New York, NY 10007

*Allianz Global Investors GmbH, et al. v. Bank of America Corporation, et al.*, 1:18-cv-10364

Plaintiffs respectfully submit this letter in support of their motion to compel the Citi Defendants ("Citi") to collect materials from 81 custodians proposed by Plaintiffs.[1]

After months of negotiations, the parties are at an impasse with respect to the number of custodians whose files Citi should search as part of its document production in this case. Citi steadfastly refuses to search more than 25 custodians. Mindful of the Court's guidance, Plaintiffs have proposed 81 custodians—significantly fewer than the 97 that Citi was directed to search in the *FOREX* class action and the 170 custodians that Citi used in regulatory investigations.[2] Our proposal encompasses only a small subset of the 177 Citi employees likely to have relevant information, especially during the early period for which document discovery is primarily needed. The proposal is manifestly reasonable and should be ordered by the Court.[3]

***Citi's conspiratorial communications are indisputably relevant.*** This case is primarily about trader coordination in the FX market. Plaintiffs' proposed custodians are mostly Citi traders whose conduct is directly at issue. We are not asking for *all* traders. Rather, we seek only traders who have *at least* one of the following important characteristics: (a) Citi itself proposed the trader as a custodian; (b) Citi agreed that the trader was a proper custodian in *FOREX*; (c) the trader was noticed for deposition in *FOREX*; (d) the individual was an early-period trader for a significant period and located at a desk where misconduct is known to have taken place; (e) the trader was terminated or disciplined for FX misconduct or was indicted in connection with FX-related misconduct; (f) based on existing discovery, the trader is highly likely to have known about or to have engaged in FX misconduct; or (g) hit reports from later period documents demonstrate that the trader has a significant number of documents that "hit" on Plaintiff name terms, suggesting they improperly shared Plaintiffs' sensitive customer information. It cannot be seriously disputed that people falling into these targeted categories are relevant custodians.

***Plaintiffs' proposal is proportional to the needs of this case.*** Plaintiffs have demonstrated the relevance of their custodians, and the burden now shifts to Citi to show that inclusion of a particular

---

[1] In accordance with Your Honor's Individual Rule II(b), Plaintiffs certify that on September 15, 2020, the parties met and conferred regarding proposed custodians for approximately one hour. Andrew Ruffino, Andrew Lazerow, and Benjamin Cavataro participated for Citi while Johanna Ong and Matt Hosen participated for Plaintiffs. The parties agreed during the meet-and-confer that they were at impasse, and confirmed the impasse in subsequent correspondence.
[2] *FOREX* refers to *In re Foreign Exchange Antitrust Litig.*, Case No. 13-cv-7789 (LGS). The time period in this case is broader than in FOREX (2003-2013, versus 2007-2013 in *FOREX*), and *FOREX* does not include benchmark claims.
[3] Plaintiffs' list of proposed custodians, along with the characteristics applicable to each custodian, is attached as **Exhibit A**.

custodian is not proportional to the needs of the case. *See Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106-07 (S.D.N.Y. 2013).

In considering proportionality, it merits emphasis that Defendants' wrongdoing spanned a decade and involved scores of bank employees all over the world. A Department of Justice investigation into Citi's collusive FX practices resulted in a $925 million fine. Citi admitted that "its currency traders and sales staff" disclosed "non-public information regarding the identity and trading activity of [its] customers to other banks or other market participants, in order to generate revenue for [Citi] at the expense of its customers."[4] Citi was also fined (a) $310 million by the Commodity Futures Trading Commission, (b) $358 million by the Financial Conduct Authority, (c) $350 million by the Office of the Comptroller of the Currency, (d) $342 million by the Federal Reserve Board, and (e) €310.8 million by the European Commission. It was also subject to government investigations in Brazil, South Africa, Switzerland, and South Korea. It settled the *FOREX* lawsuit for $394 million, and has been subject to lawsuits in Canada and Australia for similar misconduct. Citi's own internal investigations resulted in the termination or discipline of *18* traders, sitting in four different countries. *See* **Exhibit B** (CITI-FX-CIVIL-ALLIANZ-HR_000004).

A case involving such pervasive and global illegal conduct over such a long period of time will naturally need discovery beyond that which might be "proportional" in the normal case. *See generally Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, 2019 6251339, at *13 (S.D. Ohio Nov. 22, 2019) (ordering defendants to produce documents from 12 more custodians after they had already produced from 190 custodians, and rejecting arguments that the number of custodians was not proportional to the needs of the case where plaintiff had alleged $40 million in damages). Here, Plaintiffs allege billions of dollars in damages.

Citi's behavior in other similar cases confirms our request is proportional given the unique size of this case. Having agreed to 97 custodians in *FOREX*, it is difficult to conceive why *fewer* custodians is somehow not proportional to the needs of this case, which involves the same conspiracy but over a much longer period of time. It makes even less sense why Citi would agree to produce an individual's later-period documents in *FOREX*, but then refuse to produce that same individual's early-period documents in this case.

***The size of Citi's pre-existing document productions is a red herring.*** Citi can be expected to stress how many documents it has already produced. But Citi's existing production includes only documents gathered for the *FOREX* plaintiffs or for regulators, who focused on the so-called "later period" of 2008-2013. In contrast, Plaintiffs here have also alleged (and Judge Schofield has upheld) a conspiracy in the "early period" of 2003-2007 as well. Plaintiffs need early year documents because Defendants argue that proof of the conspiracy in the later years does not prove the conspiracy in the early years. Dkt. 236 (Def. MTD) at 18-21. The vast bulk of the custodians are sought for their activities in the early period, for which there has been no discovery in this case. Only six of the 81 custodians at issue (█████████████████████████████████████████████████████████████) are being requested for their work in the later 2008-2013 period. These six traders were either terminated or indicted for their FX-related misconduct, *or* documents show they were directly involved in or had knowledge of such misconduct.

***Defendants' litigation strategy makes it proportional to the needs of the case to uncover all of Defendants' conspiratorial communications.*** We think the requested documents will show the disputed custodians *directly carried out or had knowledge of the conspiracy* by way of their communications internally and with other banks. Citi cannot seriously contend that gathering additional "smoking gun" evidence is not proportional to the needs of the case. That would be true in any case where the proposed custodians were the direct participants in the conspiracy. But it is

---

[4] *See* Plea Agreement, *United States v. Citicorp.*, Case No. 3:15-cv-00078-SRU, ECF 8 at 16-17 (D. Conn. May 20, 2015).

particularly true here, given Defendants' intended litigation strategy. Defendants' defense is focused mainly on the notion that there was no *overarching* conspiracy. They contend that all instances of wrongdoing was "limited" to "specific days, specific currency pairs, specific customers, or specific notional values." *See, e.g.*, Dtk. 236 (Defs. MTD) at 5. Defendants' litigation strategy of re-casting the wrongdoing as a series of isolated events puts directly at issue not just *whether* Defendants' traders communicated in inappropriate ways (they did), but also *when and how often*. Unless Citi is willing to stipulate to how many "smoking gun" chats will suffice to demonstrate that the wrongdoing was part of a continuous agreement, Plaintiffs should be entitled to fulsome discovery allowing them to uncover *all* of Defendants' conspiratorial communications. Defendants should not be permitted to argue that their traders' misconduct was rare but deny Plaintiffs the discovery necessary to prove otherwise.

***Citi's counter-proposal falls far short.*** Citi's proposal to limit searches to 25 custodians is thus incompatible not just with the known breadth and depth of the wrongdoing, but with Defendants' intention to argue that no one chat or series of chats can prove a continuous conspiracy. Citi's proposal would almost assuredly leave Plaintiffs without access to the full extent of Defendants' wrongdoing.

For instance, Citi's list of custodians would leave off three traders (███████████████████████████████████████████) who were *terminated or indicted* in connection with FX-related misconduct. Likewise, Citi's proposal would leave off people revealed by discovery thus far to have knowledge of or engaged in FX-related misconduct (███████████████████████████████████████████). *See* **Exhibit C** (excerpts of sample chats). Plaintiffs provided Citi examples of such evidence, but Citi still refuses to add them to the custodial list. And Citi's proposal would omit people who communicated thousands of times about Plaintiffs *specifically*, as confirmed by the files already produced from the later period (███████████████████████████████████████████). Citi's proposal is also incompatible with its behavior in *FOREX*—its proposal in this case would exclude 33 custodians that were included in the later-year gathering done for the *FOREX* class action.[5]

***In sum***, Plaintiffs have demonstrated why each of their proposed custodians are highly relevant and proportional to the needs of this case. Citi cannot meet its burden to show that Plaintiffs' custodial proposal is disproportionate. For these reasons, Plaintiffs respectfully request that the Court order Citi to collect materials for the 81 custodians listed in Exhibit A.

Respectfully submitted,   */s/ Daniel L. Brockett*
Daniel L. Brockett
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor, New York, New York 10010
Telephone: (212) 849-7000 / Fax: (212) 849-7100
danbrockett@quinnemanuel.com

---

[5] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

>Jeremy D. Andersen (pro hac vice)
>Anthony P. Alden (pro hac vice)
>Johanna Y. Ong (pro hac vice)
>865 South Figueroa Street, 10th Floor, Los Angeles, California  90017
>Telephone: (213) 443-3000 / Fax: (213) 443-3100
>jeremyandersen@quinnemanuel.com
>anthonyalden@quinnemanuel.com
>johannaong@quinnemanuel.com
>
>*Counsel for Plaintiffs*

cc:   Counsel for all parties via ECF

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B
# FILED UNDER SEAL

# EXHIBIT C
# FILED UNDER SEAL