**BY ECF**  October 2, 2020
The Honorable Stewart D. Aaron
United States District Court for the Southern District of New York

    Re:    *Allianz et al. v. Bank of America Corp. et al.*, 18-cv-10364-LGS-SDA

Dear Magistrate Judge Aaron:

I write in opposition to plaintiffs' motion (ECF No. 536) to compel the Citigroup defendants ("Citi") to conduct supplemental ESI collection efforts covering **81** custodians.

**Background**. In February 2019, Citi produced approximately 111,000 documents it had previously provided to the U.S. Department of Justice ("DOJ") and other regulators. This extensive set of 548,000 pages of materials, consisting principally of transcripts of chatroom communications, had been collected in investigations concerning alleged anti-competitive FX trading conduct that plaintiffs have cited as a basis for their claims in this action. The regulatory investigations generally focused on the period between 2008 and 2013. After Judge Schofield ruled on the motion to dismiss that plaintiffs had pleaded claims potentially reaching back as far as 2003, the parties began discussing parameters for supplemental document collection efforts by defendants that would focus on the so-called "early period" of 2003-07.

**Citi's Proposal**. Citi's 25-custodian proposal (*see* Ex. A) is reasonable and proportional to the needs of the case, provides more than sufficient supplemental discovery, and is based on the categories of individuals most likely to have relevant communications. Citi's list started with the 18 individuals it previously identified as FX traders terminated, suspended, or who resigned in connection with prior investigations concerning relevant conduct ("Category A" in Ex. A). We then added:

- two custodians who supervised FX traders during the early period, to ensure sufficient coverage of management-level personnel (Category B);

- two traders in Tokyo who plaintiffs' counsel in the parallel UK High Court action have asserted are relevant based on information Citi provided pursuant to local disclosure processes, and re-produced to plaintiffs here (Category C);

- seven individuals who have been or will be deposed in the *Forex* action, a case involving similar allegations and claims that has been vigorously litigated on a well-developed factual record over a period of nearly seven years (Category D); and

- a former Citi trader who was interviewed by DOJ in its investigation (Category E).

This resulted in a preliminary count of 30, but Citi subtracted the five individuals in these categories who were not employed by Citi during the early period. Citi's 25-custodian proposal would give plaintiffs two and a half times the 10-custodian limit that normally applies under Section II-A-1-(a) of Judge Schofield's Individual Practices.[1] It also accommodates plaintiffs' scope of allegations, including traders in London, New York, Tokyo, and Singapore; supervisors

---

[1] Judge Schofield previously adhered to this limit when she directed plaintiffs to propose up to 10 custodians who are "likely to be the most fruitful witnesses" for each plaintiff group's discovery responses (*see* ECF No. 372).

as well as traders; and individuals covering both G10 and emerging market currencies. The approach detailed above—given the supplemental nature of these custodians, the individualized, substantive rationale for each person, and proportionality considerations—reflects ample and appropriate custodians to supplement the voluminous discovery Citi has already provided.[2]

In addition, Citi's proposal cannot be viewed in isolation because this case focuses on communications that allegedly took place in multi-bank chatrooms. Collections from 25 Citi custodians would be supplemented by documents from the 15 other defendants. By way of example, if the other banks collect from a range of 15 to 25 custodians on average, plaintiffs would receive communications from a total of 250 to 400 custodians. For each custodian, this would include communications with individuals at other defendant and non-defendant banks and intra-bank communications regardless of whether the other persons on the communications are themselves custodians. Plaintiffs thus would receive communications involving an exponentially larger number of employees and market participants beyond the already significant starting point of 25 custodians from Citi. Indeed, under a conservative assumption that each defendant custodian in this case may have communicated with at least 10 non-custodians, discovery based on these custodian count assumptions might shed light on communications involving thousands of people. It is highly unlikely this approach would lead to any material gaps, but Citi would consider in good faith targeted requests to address any reasonable gaps, after documents from Citi's proposed custodians are produced.

**Plaintiffs' Proposal**. Plaintiffs' 81 custodian demand is not far off from the threshold of 100 the Court previously characterized as "far too many" custodians (*see* ECF No. 532 (8/31/20 Hearing Tr.) at 54). Under Judge Schofield's Individual Practices, a party seeking to compel another party to collect ESI from more than 10 custodians bears the burden of demonstrating "good cause" for the additional custodians. *See* § II-A-1-(a). Plaintiffs have not demonstrated good cause to subject Citi to more than ***eight times*** the presumptive limit for ESI custodians. The second part of the annexed Exhibit A shows how the parties' proposals differ, and why Citi is contesting 56 of the custodians proposed by plaintiffs for these supplemental discovery efforts.

As an initial matter, plaintiffs acknowledge that the purpose of this exercise is to address the 2003-07 early period (Pl. Ltr. at 2), yet six of the individuals they propose (*see* Ex. A, Category F) were not employed at Citi during that period. Five of the six worked at Citi only in the later period, and plaintiffs *already* have their later period documents because they were regulatory custodians. The sixth (███████) was not employed by Citi at ***any*** time during the entire period relevant to this case (2003-13).

Even less justifiable are the 43 individuals plaintiffs propose merely because they were DOJ investigation custodians, or were employed at Citi during the early period, or both (*see* Ex. A, Category G). Plaintiffs' premise that the number of custodians here should be comparable to the number of custodians covered by Citi's regulatory productions assumes a false equivalence.

---

[2] As Your Honor observed during the status conference that was held earlier today, given the extensive regulatory productions plaintiffs already have, it is not reasonable or proportional for plaintiffs to seek through this supplemental discovery to "turn over every stone." Plaintiffs have asserted that their claims are broader than those in *Forex* because they cover benchmark transactions, but benchmark conduct was squarely addressed by the prior investigations and the regulatory productions re-produced in this case.

Regulators have various, often privately considered, reasons to cast the net broadly when exercising Government enforcement authority, precluding any conclusion that all of Citi's 97 regulatory custodians automatically are relevant and proportional for this supplemental discovery. Nor should the bare fact that a person was an FX trader in the early period, or worked in a city where others allegedly engaged in wrongful conduct at some time (*see* Pl. Ltr. at 1), create a presumption that the early period trader engaged in misconduct and must be added to Citi's already extensive list of early period custodians.³ Indeed, **none** of the 43 individuals in Category G is classified on plaintiffs' chart (Pl. Ltr. Ex. A) as a purported "bad actor."

Plaintiffs' assertion that their proposal is "significantly fewer than the 97 that Citi was directed to search in … *FOREX* … and the 170 custodians that Citi used in regulatory investigations" (Pl. Ltr. at 1) is false and misleading. Citi had 97 regulatory custodians, not 170. And Citi did not "search" any custodians' documents in *Forex*; it merely reproduced the relevant documents from its regulatory investigation to *Forex* plaintiffs. The suggestion that Citi engaged in an extensive collection and review process in *Forex* which it is now resisting in this action is simply not true.

In fact, the breadth of the prior regulatory productions cuts *against* plaintiffs' proposal. Plaintiffs have had more than a year to review approximately **2.3 million** documents various defendants produced in investigations covering the later period, and plaintiffs assert that the alleged conspiracy in the later period was a continuation from the early period. Plaintiffs also have extensive information from regulatory orders, depositions in *Forex*, and responses by defendants to plaintiffs' broad information requests. Plaintiffs thus should have more than sufficient information to make more targeted and proportional requests for early period custodians.

Plaintiffs assert that Citi's proposal is inadequate because it does not include 14 specifically identified individuals (*see* Pl. Ltr. at 3). One of these individuals (█████) in fact is already included in Citi's proposal, and six were not employed during the early period (Category F). For two people (Category H) whose later period documents plaintiffs have reviewed, plaintiffs press for inclusion because there were hits when search terms based on plaintiffs' names were run against their later period documents. Yet plaintiffs do not identify purported "bad" conduct by these individuals, and there is no explanation why hits alone are sufficient, particularly since Citi's proposal already includes several other custodians with substantial hit counts on the plaintiff name terms for later period documents. In the five remaining cases (Category I), plaintiffs rely principally on their opaque, subjective classification of individuals as "bad actors." While Citi disagrees with these characterizations and plaintiffs' interpretations of chat language, none of these documents show any misconduct at Citi during the early period, and in any event, the cited examples (*see* Pl. Ltr. Ex. C) generally show the individuals communicating with others already included in Citi's custodian proposal or in proposals made by other banks.

The 56 disputed individuals are plainly more peripheral than the individuals included in Citi's proposal, who are calculated to provide ample coverage of relevant subject matter. Plaintiffs' proposal for Citi to collect supplemental ESI from more than **eight times** the normal custodian limit is not remotely reasonable or proportional to the needs of the case. Indeed, simply collecting data for this many custodians going back 17 years would be a massive undertaking.

---

³ *See, e.g., Fort Worth v. J.P. Morgan*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (rejecting argument to include custodian based on the fact that he "worked in the same business unit as certain of defendants' custodians").

Respectfully submitted,

COVINGTON & BURLING LLP

By: <u>s/ Andrew A. Ruffino</u>
    Andrew A. Ruffino
    Andrew D. Lazerow

*Attorneys for Defendants Citigroup Inc., Citibank, N.A. and Citigroup Global Markets, Inc.*