UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALLIANZ GLOBAL INVESTORS GMBH, et al.,
                                  Plaintiffs,          18 Civ. 10364 (LGS) (SA)

            -against-                    **OPINION AND ORDER**

BANK OF AMERICA CORPORATION, et al.,
                                  Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       This case concerns an alleged conspiracy among the world's largest banks to fix prices in the foreign exchange ("FX") market. Plaintiffs are almost 1,300 investment firms and government entities that opted out of the class action captioned *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13 Civ. 7789 (S.D.N.Y.) ("*In re Forex*"). Plaintiffs brought this action against sixteen banks and their affiliates, alleging claims of market manipulation in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.*, and unjust enrichment.

       Defendant The Royal Bank of Canada ("Royal Bank of Canada") moves to dismiss the Third Amended Complaint ("TAC") for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Royal Bank of Canada and Defendant RBC Capital Markets LLC ("RBCCM") (collectively, "Movants") move to dismiss the TAC for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted as to RBCCM and denied as to Royal Bank of Canada.[1]

---

[1] MUFG Bank, Ltd. ("MUFG") jointly moved to dismiss. However, on May 26, 2021, the claims against MUFG were voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

I.     BACKGROUND

Familiarity with the Orders, the underlying facts and procedural history is assumed.  *See Allianz Glob. Invs. Gmbh v. Bank of Am. Corp.* ("Allianz I"), 457 F. Supp. 3d 401, 401 (S.D.N.Y. 2020), *reconsideration denied*, No. 18 Civ. 10364, 2020 WL 2538394 (S.D.N.Y. May 19, 2020); *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, ("Allianz II"), 463 F. Supp. 3d 409, 409 (S.D.N.Y. May 28, 2020).  Unless otherwise stated, the following facts are taken from the TAC and are assumed to be true for purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

From approximately 2003 to 2013, Defendants conspired to manipulate the FX market for their financial benefit.  Defendants exchanged confidential customer information and coordinated their trading strategies to manipulate FX benchmark rates and inflate bid/ask spreads through non-public methods of communication, including private chatrooms and text messages.  As a result of the conspiracy, Plaintiffs, who were participants in the market for FX instruments, were harmed.

Royal Bank of Canada is a company organized under the laws of Canada, with a principal place of business in Toronto, Canada and nine branch offices in the United States.  According to the TAC, RBCCM is a business segment of Royal Bank of Canada, incorporated in the United States, with its principal place of business and headquarters in New York.  The TAC alleges that both Royal Bank of Canada and RBCCM were participants in the FX market.  Royal Bank of Canada had extensive FX trading operations in the United States, including in New York, and its global FX market shares in 2012 and 2013 were 0.84% and 0.88% respectively.

On April 30, 2020, the Court in *Allianz I* granted a Rule 12(b)(2) motion to dismiss the Second Amended Complaint ("SAC") as to Royal Bank of Canada and held that the SAC did

"not plead sufficient facts to support personal jurisdiction over . . . RBC." 457 F. Supp. 3d at 413. Plaintiffs were granted leave to file the TAC to add factual allegations against Royal Bank of Canada, and on August 3, 2020, Plaintiffs did so. The TAC contains additional allegations about specific chats in which Royal Bank of Canada traders participated. The alleged chats include chats with New York-based traders from other banks in which the traders reference and ask about the FX benchmark rate and/or bid-ask spread. The TAC asserts two claims, one for violation of section 1 of the Sherman Act and one for unjust enrichment.

## II.  STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(2), "a plaintiff must make a prima facie showing that jurisdiction exists." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). "A *prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *accord Cunningham v. Gen. Motors LLC*, No. 20 Civ. 3097, 2021 WL 827124, at *1 (S.D.N.Y. Mar. 4, 2021). To make out a prima facie case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish "'a statutory basis for personal jurisdiction'" and that "'the exercise of personal jurisdiction [] comport[s] with constitutional due process principles.'" *Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 674 F.3d 50, 59-60 (2d Cir. 2012); *accord United States ex rel. TZAC, Inc. v. Christian Aid*, No. 17 Civ. 4135, 2021 WL 2354985, at *2 (S.D.N.Y. June 9, 2021). In evaluating whether Plaintiff has made out a prima facie case of personal jurisdiction, the court must "construe the pleadings and affidavits

in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, Inc., 722 F.3d at 85; *accord Cunningham*, 2021 WL 827124 at *1.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor," *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted), but no effect is given to legal conclusions, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

### III.   DISCUSSION

#### A. RBCCM

All claims against RBCCM are dismissed pursuant to Rule 12(b)(6) because the TAC does not sufficiently plead RBCCM's involvement in the alleged conspiracy. "An antitrust complaint that fails to connect *each or any individual entity* to the overarching conspiracy . . . cannot ordinarily survive a motion to dismiss." *In re Treasury Sec. Auction Antitrust Litig.*, 15 MD 2673, 2021 WL 1226670, at *11 (S.D.N.Y. Mar. 31, 2021) (emphasis added). Although the TAC includes conclusory allegations that RBCCM participated in the alleged conspiracy, it does

not include any specific allegations as to chats or text messages through which RBCCM traders sought to manipulate FX benchmark rates or to inflate bid/ask spreads.  *See Allianz II*, 463 F. Supp. 3d at 437 (dismissing claims against SG America Securities LLC where the complaint alleged only a single chat in which this entity participated and the chat did not "mention spreads or implicate manipulating the benchmark").

The TAC's group pleading regarding "RBC" -- which the TAC defines as including Royal Bank of Canada, RBCCM and their subsidiaries -- is not sufficient to state a claim against RBCCM.  For conspiracy claims under the Sherman Act, "group pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand review on a motion to dismiss."  *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Sup. 3d 285, 316 (S.D.N.Y. 2018) (internal citations and quotation marks omitted); *accord Merrill Lynch Cap. Servs., Inc. v. UISA Fin., et al.*, No. 9 Civ. 2324, 2009 WL 10701974, at *2 (S.D.N.Y. Oct. 1, 2009) (finding that the "'unadorned' lumping together of the various Merrill Lynch entities [was] insufficient as a matter of law under *Twombly* and *Iqbal*"); *cf.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 172 n.7, 173, 192 (2d Cir. 2015) (permitting group pleading where the complaint alleges fraudulent statements in offering materials jointly made by corporate affiliates, but explaining that "[t]he vitality of the group pleading doctrine as to federal securities fraud is an open question in our Circuit," that was not before the court).

The TAC alleges that RBC produced "nearly 300 interbank chats . . . in connection with its settlement of [a related case]," and further explains that these chats were likely produced by RBCCM, the settling defendant in *In re Forex*.  While the TAC alleges "that many, if not most, of the chats involve traders from The Royal Bank of Canada," it does not allege that any of these

chats involve RBCCM traders. Such a generalized pleading, without reference to specific chats involving RBCCM and the substance of those chats, is insufficient to state a claim that RBCCM participated in a conspiracy to manipulate FX benchmark rates and inflate bid/ask spreads. Accordingly, RBCCM is dismissed.

### B. Royal Bank of Canada

#### 1. Personal Jurisdiction

The parties dispute whether the exercise of personal jurisdiction over Royal Bank of Canada would violate constitutional due process. For the reasons outlined below, the TAC pleads facts sufficient to make a prima facie showing that the exercise of personal jurisdiction over Royal Bank of Canada is proper based on a theory of specific jurisdiction. The TAC does not allege facts supporting general jurisdiction, nor do Plaintiffs argue that it applies. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (stating that a corporation is subject to general jurisdiction in the state of its incorporation and its principal place of business, and perhaps elsewhere in an exceptional case).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). "[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id*. at 529 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)). A court analyzes personal jurisdiction in two steps: (1) "the court must decide if the individual or entity has 'purposefully directed his activities at the forum and the litigation arises out of or relates to those activities'" (the "minimum contacts" analysis); and (2) "the court must 'determine whether

6

the assertion of personal jurisdiction would comport with fair play and substantial justice'" (the "reasonableness" analysis). *In re del Valle Ruiz*, 939 F.3d at 528-39 (internal citations, quotation marks and alterations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985)). The exercise of jurisdiction comports with due process only if the defendant's conduct is such that the defendant "should reasonably anticipate being haled into court [in the forum State]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

> i. **Minimum Contacts**

Because the TAC alleges a violation of the Sherman Act, the appropriate forum to consider for purposes of the minimum contacts analysis is the entire United States. *See, e.g., S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process, . . . the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.") (collecting cases); *Allianz I*, 457 F. Supp. 3d at 408 (considering Defendants' contacts with the entire United States).

The minimum contacts prong of specific jurisdiction can be satisfied by conspiracy jurisdiction, which exists where a defendant's connection to the forum state (or here the United States) arises from participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86-87 (2d Cir. 2018). To rely on conspiracy jurisdiction, the complaint must allege "that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to

subject that co-conspirator to jurisdiction in that state." *Id*. at 87; *accord Allianz I*, 457 F. Supp. 3d at 408.

Here, the TAC sufficiently pleads that (1) a conspiracy to inflate bid/ask spreads existed, (2) Royal Bank of Canada participated in that conspiracy and (3) co-conspirators committed overt acts in furtherance of the conspiracy and had sufficient contacts with the United States[2] to subject them to personal jurisdiction here. In *Allianz I*, this Court found that although the SAC contained plausible allegations of collusion, as well as allegations tying collusive conduct to the United States, the SAC lacked specific allegations sufficient to plead that Royal Bank of Canada participated in the alleged conspiracy. *Allianz I*, 457 F. Supp. 3d at 412-413. The Court noted that the SAC included only a "single chat in which traders from RBC participated," and further, that the chat did not "discuss fixing the benchmark rate or manipulating spreads." *Id*. at 413. In contrast, the TAC alleges numerous chats in which Royal Bank of Canada's traders participated. Many of these chats involve discussions of benchmark rates and/or bid/ask spreads and include New York-based traders from alleged co-conspirators like Credit Suisse, Barclays and Bank of America. In addition, the TAC pleads that Royal Bank of Canada knew where co-conspirators' trading desks were located and, as a result, was aware that its co-conspirators were engaging in acts in furtherance of the alleged conspiracy in New York. These allegations support a prima facie showing of specific jurisdiction in the United States.

Royal Bank of Canada contends that the TAC's allegations regarding specific chats are insufficient because these additional chats do not evidence participation in the alleged

---

[2] Here, many of Royal Bank of Canada's co-conspirators' ties with the United States are with New York, where they have trading desks. Because Royal Bank of Canada's co-conspirators have ties with New York, it follows that they have ties with the United States.

conspiracy and, instead, merely show Royal Bank of Canada traders requesting general pricing information. However, the additional chats in the TAC suggest that Royal Bank of Canada traders discussed coordinating trades and specifically mention the benchmark rate and/or bid/ask spread. In addition, many of these chats include references to a "fix" and several chats include comments like "what kinda spreads are you showing" and "what is your boys spread." These additional chats are sufficient to plead Royal Bank of Canada's participation in the alleged conspiracy and acts giving rise to Plaintiff's alleged injury. *See Allianz I*, 457 F. Supp. 3d at 410-411 (pointing to UBS AG, The Royal Bank of Scotland and Societe Generale traders' chats as evidence of the entities' participation in the alleged conspiracy); *Contant v. Bank of America Corporation*, 385 F. Supp. 3d 284, 292- 95 (S.D.N.Y. May 17, 2019), *reconsideration denied*, No. 17 Civ. 3139, 2019 WL 12276059 (S.D.N.Y. July 8, 2019); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 1268267, at *5-6 (S.D.N.Y. Mar. 31, 2016).

Royal Bank of Canada also argues that because none of the regulatory fines, penalties or proceedings alleged in the TAC relate to a global FX conspiracy in which Royal Bank of Canada was alleged to have participated, exercise of personal jurisdiction over Royal Bank of Canada must be improper. This argument is unpersuasive. The scope of criminal or regulatory investigations does not circumscribe the scope of the alleged civil conspiracy. *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) (explaining that "the scope and nature of criminal guilty pleas are not determinative of the plaintiffs' potential claims in a civil antitrust suit") (internal citation and quotation marks omitted).

      **ii.    Reasonableness**

      The reasonableness prong of the specific jurisdiction inquiry is also satisfied. Once minimum contacts have been established, the next step is to consider "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice -- that is whether it is reasonable under the circumstances of the particular case." *Waldman*, 835 F.3d at 326 (internal quotation marks omitted); *accord Miami Prods. & Chem. Co. v. Olin Corp.*, No. 19 Civ. 385, 2021 WL 2587214, at *2 (S.D.N.Y. June 24, 2021). In assessing reasonableness,

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief[,] . . . [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies[] and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987); *accord In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 327 (S.D.N.Y. 2020). "Where the defendant has had only limited contacts with the [forum] it may be appropriate to say that he will be subject to suit in that [forum] only if the plaintiff's injury was proximately caused by those contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (internal citation omitted); *see also Ford Motor*, 141 S. Ct. at 1032 (finding specific jurisdiction where resident-plaintiffs alleged in-state injury from defective products that Ford extensively promoted, sold and serviced in a forum state, even though plaintiffs had purchased their Ford vehicles elsewhere).

      Here, the exercise of personal jurisdiction is reasonable based on the allegations in the TAC. There is little burden in requiring Royal Bank of Canada to answer the allegations that it engaged in collusive conduct in the United States. The TAC alleges that Royal Bank of Canada "had extensive FX trading operations in the United States, including in New York, both directly and through its subsidiaries," and that it "provides corporate banking services to companies

primarily located in the United [S]tates, including [] foreign exchange," from its New York branch. While its global FX market shares in 2012 and 2013 were only 0.84% and 0.88%, respectively, Royal Bank of Canada "had, within the United States and New York, billions of dollars' worth of FX instruments outstanding each day, including transactions directly with Plaintiffs." *See In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d at 327 (finding that the reasonableness requirement was satisfied where the complaint alleged that "[t]he Foreign Defendants are some of the world's largest financial institutions and [they or] their affiliates 'are alleged to have substantial presence in the U.S.'") (citation omitted). Further, Defendants' suit-related ties to the United States -- specifically, benchmark and spread-related chats with New York-based traders -- are causally linked to Plaintiffs' injury, namely, that they "traded to their detriment in currencies the prices of which were tied to artificially manipulated benchmark rates and bid/ask spreads," *Allianz II*, 463 F. Supp. 3d at 418. In addition, the United States has an interest in resolving antitrust disputes regarding alleged collusive conduct that occurred within its borders. Finally, considerations of efficiency -- which is enhanced through Plaintiffs' efforts to adjudicate their claims against the various Defendants in this single action -- weigh in favor of the exercise of jurisdiction. Accordingly, the Court's exercise of personal jurisdiction over Royal Bank of Canada would not be unreasonable.

### 2. Alleged Failure to State a Claim

#### i. Timeliness

Movants seek to dismiss the antitrust claim against Royal Bank of Canada as untimely. The motion on this basis is denied. At this stage of the litigation, the Court declines to decide whether the antitrust claim against Royal Bank of Canada is timely.

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal citation omitted); *accord Allianz II*, 463 F. Supp. 3d at 425. A four-year statute of limitations applies to private antitrust actions, *see* 15 U.S.C. § 15b, beginning "when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *accord World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 698 (2d Cir. 2009) (summary order). "[I]n the case of a continuing violation, . . . each overt act that is part of the violation and that injures the plaintiff starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (internal quotation marks omitted); *accord Allianz II*, 463 F. Supp. 3d at 426. Plaintiffs filed the initial complaint in this case on November 7, 2018, and absent tolling, the statute of limitations would bar Plaintiffs' claims that arise from acts before November 7, 2014.

In *Allianz II*, the Court held that Plaintiffs (1) were put on inquiry notice of Defendants' alleged manipulation of the FX benchmark rate in November 2013 by a Bloomberg article and related media reports (collectively, the "Bloomberg Article"), and (2) were put on inquiry notice of Defendants' alleged inflation of the bid/ask spread by May 2015 by a public Department of Financial Services ("DFS") Consent Order. *See Allianz II*, 463 F. Supp. 3d at 426-28. The Bloomberg Article did not put Plaintiffs on inquiry notice of Defendants' alleged inflation of the bid/ask spread because the Bloomberg Article made no mention of such conduct. *Id*. at 427-28. The Court considered, and rejected as unpersuasive, Defendants' argument that "because Plaintiffs allege a single conspiracy, not two separate conspiracies," the Bloomberg Article

12

sufficed to put Plaintiffs on notice of a conspiracy to manipulate spreads. *Id.* at 427-28. Movants seek to revisit this issue and similarly contend that, because Plaintiffs have alleged only one conspiracy involving both manipulation of benchmark rates and inflation of spreads, only one inquiry notice date -- November 2013 -- should apply to both types of conduct. This argument is rejected because it is contrary to the holding in *Allianz II*, and in any event may not change the conclusion that the antitrust claim is timely based on the application of *American Pipe* tolling.

As held in *Allianz II, American Pipe* tolling applies to claims against Defendants named in *In re Forex*. The *American Pipe* tolling doctrine provides that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class" until they "cease to be members of the class." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 247, 253, 255 (2d Cir. 2007) (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974)). The doctrine tolls the statute of limitations for claims at issue in the subject class action and against the named defendants in that class action. *Id.* Claims related to those at issue, in this case, were added to *In re Forex* on July 31, 2015, and dismissed on September 20, 2016, which was before the Plaintiffs here opted out of *In re Forex*. *In re Forex*, No. 13 Civ. 7789, 2016 WL 5108131, at *17 (S.D.N.Y. Sept. 20, 2016); *accord Allianz II*, 436 F. Supp. 3d at 426. Accordingly, the statute of limitation for claims against Defendants named in *In re Forex* was suspended between July 31, 2015, and September 20, 2016. Applying the same tolling period here, Plaintiffs' claims against the *In re Forex* Defendants are timely -- based on the November 2013 inquiry notice date; the 4-year statute of limitations for antitrust claims; the additional thirteen-month tolling period during which the statute of limitations period was suspended; and the November 7, 2018, filing date. *See Allianz II*, 463 F. Supp. 3d at 427.

Based on the face of the TAC, it is not apparent whether the thirteen-month tolling period applies to Royal Bank of Canada even though it was not a defendant in *In re Forex*. *See Inspired Cap., LLC v. Conde Nast*, No. 18 Civ. 712, 2019 WL 2191249, at *5 (S.D.N.Y. May 21, 2019), *aff'd*, 803 F. App'x 436 (2d Cir. 2020) (explaining that "[w]hen a defendant raises timeliness in a pre-answer motion to dismiss, her affirmative defense may be granted only if it is clear on the face of the complaint that the statute of limitations has run."). "The one exception [to the general rule that tolling does not apply to new defendants not named in the prior class action] is that claims may be tolled against a new defendant if the class complaint put that defendant on notice that the defendant should have been sued but for a mistake in the pleading." *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 2015 WL 6243526, at *150 (S.D.N.Y. Oct. 20, 2015).

In *Allianz II*, the Court held that claims against Barclays, PLC, J.P. Morgan Securities LLC and SG Americans Securities, LLC were not subject to *American Pipe* tolling because those Defendants were merely affiliates of Defendants named in *In re Forex*. *See Allianz II,* 463 F. Supp. 3d at 428.[3] Here, whether Royal Bank of Canada is similarly situated to these Defendants is better suited for resolution after discovery because Royal Bank of Canada and RBCCM have created a question as to whether RBCCM ever participated in the FX market and, relatedly, whether it was clear that Royal Bank of Canada should have been named in *In re*

---

[3] The "Conclusion" paragraph of *Allianz II* erroneously states that "claims against Barclays PLC, J.P. Morgan Securities LLC and Royal Bank of Canada [*sic*] premised on benchmark manipulation," are dismissed. *Allianz II*, 463 F. Supp. 3d at 438. The reference to "Royal Bank of Canada" is an error, as evidenced by the portion of *Allianz II* discussing the timeliness of "Claims Against New Defendants," including "Barclays OLC, J.P. Morgan Securities LLC and *SG Americas Securities, LLC*," id. at 428 (emphasis added), and by *Allianz I*, dismissing all claims against Royal Bank of Canada for lack of personal jurisdiction.

14

*Forex* but for a mistake. *See Akhtar v. Saudia*, No. 19 Civ. 3763, 2021 WL 1758807, at *10 (S.D.N.Y. May 4, 2021) (denying defendant's motion to dismiss the claims as untimely because the underlying analysis required a fact-intensive inquiry).

Plaintiffs argue that Royal Bank of Canada and its wholly-owned subsidiary RBCCM have played a "shell game," both seeking dismissal by pointing the finger at the other. This argument has some appeal. To support its argument that the Court lacks specific personal jurisdiction over RBCCM, RBCCM asserts that it did not employ traders or engage in any FX transactions. Similarly, in the briefing in support of a motion to dismiss the Second Consolidated Amended Complaint in *In re Forex*, RBCCM cited an October 1, 2015, e-mail and asserted that "none of the participants identified as traders for RBC in any of the chats referenced in the SAC is or was employed by RBC Capital Markets, LLC." However, in the context of its timeliness argument, Royal Bank of Canada ignores the import of its subsidiary's assertions that it is not an FX market participant. It would be inequitable to permit RBCCM and Royal Bank of Canada to use these assertions to advantage in one context but deny their impact in another. In addition, the accuracy of RBCCM's assertions is uncertain. In its answer to the Third Consolidated Amended Class Action Complaint in *In re Forex*,[4] RBCCM made statements evincing participation in the FX market, including that "RBCCM admits that it sells FX Instruments directly to its customers," and that "[RBCCM] admits the spread is one way in which RBCCM is compensated as a dealer in the FX market." *In re Forex*, No. 13 Civ. 7789, RBC Capital Markets, LLC's Answer to Plaintiffs' Third Consolidated Amended Class Action

---

[4] The Court can take judicial notice of pleadings filed in a different action. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a "complaint as a public record"); *accord Dennis v. JPMorgan Chase & Co.*, No. 16 Civ. 6496, 2021 WL 1893988, at *6 (S.D.N.Y. May 11, 2021).

Complaint, Dkt. No. 685, ¶¶ 5, 8 (S.D.N.Y. Nov. 18, 2016). Accordingly, the Court reserves until later in the litigation the decision whether to apply *American Pipe* tolling and whether the antitrust claim against Royal Bank of Canada is timely.

    **ii.   Antitrust Standing**

Movants seek to dismiss the antitrust claims of Plaintiffs that have not alleged transactions with a Defendant as a counterparty on the ground that these Plaintiffs are not efficient enforcers of the antitrust laws and therefore lack antitrust standing. While *Allianz II* did not address whether such Plaintiffs are efficient enforcers, it dismissed claims based on transactions with non-defendant dealers as untimely and insufficiently pleaded. *Allianz II*, 463 F. Supp. 3d at 419 (finding that the Complaint did not plead "injury based on transactions with non-defendants that were not based on the benchmark rate" because collusion amongst Defendants "would not have affected the spreads offered by non-defendant firms who were not involved in the collusion"). For the reasons discussed in *Allianz II,* the statute of limitations for claims based on transactions with non-defendants -- *i.e.*, defendants who were not named in *In re Forex* who are largely the same as the originally-named defendants in this action -- has not been tolled, and those claims are therefore dismissed as untimely. *Id*. at 429.

Movants point to Appendix A of the TAC, which includes a table listing each Plaintiff and corresponding columns for "Transaction Types" and "Defendant Counterparties." For many of the Plaintiffs listed in Appendix A, the "Defendant Counterparties" column is left blank. Movants contend that all of these Plaintiffs should be dismissed for failure to plead with specificity that they engaged in at least one transaction with a Defendant. Following *Allianz II*, the Court held that "[s]pecifics regarding individual transactions that occurred may be sought during discovery." *Allianz Global Investors GMBH, et al. v. Bank of America Corp., et al.*, No.

18 Civ. 10364, Opinion and Order, Dkt. No. 499, at 11 (S.D.N.Y. Aug. 21, 2020). Any Plaintiff that discovers it has no surviving claims presumably will want to withdraw from the litigation to conserve resources, and in any event, their claims are subject to dismissal after discovery on Defendants' motion. In the meantime, Plaintiffs' allegations that they each "had relevant FX transactions that occurred in the United States, by way of the Plaintiff and/or its counterparty operating in the United States," are sufficient to survive the pleading stage. *See In re Eur. Gov't Bonds Antitrust Litig.*, No. 19 Civ. 2601, 2020 WL 4273811, at *13 (S.D.N.Y. July 23, 2020), *reconsideration denied*, 2020 WL 7321056 (S.D.N.Y. Dec. 11, 2020) ("[T]he Court is not persuaded that Plaintiffs must plead facts regarding specific transactions to allege antitrust standing in this case.").

    iii.    The FTAIA's Impact on Foreign Plaintiffs' Claims

Movants seek dismissal of the foreign Plaintiffs' antitrust claims on the ground that, as pleaded, the TAC does not allege transactions that are permitted under the Foreign Trade Antitrust Improvements Act ("FTAIA"). The motion to dismiss on this ground is denied.

In *Allianz II*, the Court held that based on one of the FTAIA's "exceptions to the general bar on the extraterritorial application of the Sherman Act" -- the import exclusion -- foreign Plaintiffs' claims based on transactions with domestically-operating Defendants are not barred. *Allianz II*, 463 F. Supp. 3d at 424 (explaining that "[f]oreign exchange transactions where one of the parties is operating in the United States directly affect 'import commerce' because a party in the United States is importing currency"). Neither party seeks to revisit this holding. However, here, Movants dispute whether the foreign Plaintiffs have pleaded facts sufficient to show that they transacted with a domestic counterpart. This argument is unavailing. Plaintiffs allege that they each "had relevant FX transactions that occurred in the United States, by way of the

17

Plaintiff and/or its counterparty operating in the United States," and this is sufficient to survive the pleading stage. *See Twombly*, 550 U.S. at 547 ("[T]he Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

### 3. Unjust Enrichment

Royal Bank of Canada's motion to dismiss the unjust enrichment claim is denied. "A person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution & Unjust Enrichment § 1 (2021). Royal Bank of Canada argues that the unjust enrichment claim in this action should be dismissed because it is duplicative of Plaintiffs' antitrust claims. However, under these circumstances, there is no reason the unjust enrichment claim cannot be pleaded in the alternative to the antitrust claims. "[W]hile a plaintiff cannot obtain a double recovery under the [antitrust laws] and state unjust enrichment law, there is no bar to pleading both claims simultaneously." *In re Credit Default Swaps Antitrust Litig.*, 2014 WL 4379112, at *18 (S.D.N.Y. Sept. 4, 2014) (internal citation and quotation marks omitted); *accord Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746, 2004 WL 1926087, at *7 (S.D.N.Y. Aug. 31, 2004). Royal Bank of Canada cites *Corsello v. Verizon New York, Inc.*, for the proposition that unjust enrichment "is not a catchall cause of action to be used when others fail," and instead "is available only in unusual situations" where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." 18 N.Y.3d 777, 779 (2012). Even so, dismissal is inappropriate at this stage when the allegations in the TAC support both claims, for unjust enrichment and an antitrust violation.[5]

---

[5] For the purpose of this discussion, it is assumed that New York law applies. Identification of the governing state law is "not necessary at the pleading stage because the elements of unjust

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted as to RBCCM and denied as to Royal Bank of Canada.

The Clerk of Court is respectfully directed to close the motion at Docket No. 551.

Dated: July 28, 2021
      New York, New York

                                           LORNA G. SCHOFIELD
                                    UNITED STATES DISTRICT JUDGE

---

enrichment are similar in every state," and "defendants have made no showing that any differences in the various state laws are material at this early stage of the litigation." *Allianz II*, 463 F. Supp. 3d at 432-33.  Movants have not shown that a material difference in state laws requires immediate consideration of choice of law issues.

19