### DONTZIN NAGY & FLEISSIG LLP

980 MADISON AVENUE
NEW YORK, N.Y. 10075
TELEPHONE (212) 717-2900
FAX (212) 717-8088

HON. MICHAEL J. DONTZIN (1993-2012)       RUBEN G. PERLMUTTER
MATTHEW S. DONTZIN       AMINA M. HAFEZ
TIBOR L. NAGY, JR.       SUSAN S. HU
DAVID A. FLEISSIG       ASHER T. LOWENSTEIN
TRACY O. APPLETON       HEIDI R. SCHUMANN
JASON A. KOLBE       WILLIAM H. LAGRANGE
     RICHARD J. SARCONE

January 28, 2022

**VIA ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/04/2022

    Re:    *Allianz Global Investors GmbH, et al. v. Bank of America Corporation, et al.*,
             Case No. 1:18-cv-10364 (S.D.N.Y. 2018)

Dear Judge Aaron,

    Defendants write pursuant to Rule II.B. of the Court's individual practices respectfully to request an order directing Plaintiffs to comply with the parties' stipulated deposition protocol (the "Deposition Protocol"), which was so-ordered by Judge Schofield in March 2019. *See* ECF 186. The Deposition Protocol provides that each side can take up to 130 fact depositions across this case and the related *FOREX* and *Contant* class actions. *See id.* at 9. After discovery in the related cases, Defendants have 96 depositions left to take in the *Allianz* case. However, Plaintiffs now seek a presumptive limit of 3 depositions per Plaintiff "group," which would total just 42—less than half Defendants' allocation. This position violates both the Deposition Protocol and Judge Schofield's orders. It also seeks to shield from discovery substantially all of the 1,000-plus employees who, according to Plaintiffs, have knowledge of their claims. And even with 96 depositions, the vast majority of these individuals will not be deposed. Defendants seek the bare minimum of depositions needed to defend a case in which Plaintiffs demand $1 billion or more in damages. Defendants respectfully request an order confirming that Defendants may allocate their remaining depositions across Plaintiffs' employees as Defendants see fit. As a limitation, Defendants agree not to seek more than 9 depositions for any one Plaintiff "group"—the same default limit applicable to individual Defendants—without a showing of good cause to the Court.

**I.    THE DEPOSITION PROTOCOL ENTITLES DEFENDANTS TO 96 REMAINING DEPOSITIONS**

    The Deposition Protocol provided that "Plaintiffs in the *FOREX*, *Allianz*, and *Contant* actions (collectively) and Defendants (collectively) may each take up to 130 depositions." ECF

186 at 9.  The defendants in the *FOREX* and *Contant* class actions have taken 34 depositions in the aggregate, leaving 96 fact depositions for the *Allianz* Defendants.

Within that overall limit, the Deposition Protocol set no cap on depositions per party for the *Allianz* Plaintiffs.  It established presumptive limits of no more than (a) 9 depositions of witnesses associated with any one of the Defendant groups across the 3 actions, and (b) 3 depositions for witnesses associated with the *class* plaintiffs for the *FOREX* and *Contant* actions. *See* ECF 186 at 9.  But the Deposition Protocol carved out the *Allianz* Plaintiffs from the cap for class plaintiffs because (i) the *Allianz* case is not a representative class action; (ii) there were more than 1,200 individual *Allianz* Plaintiffs in March 2019 (and more than 1,000 remain); and (iii) at the time, it was not clear whether the large "groups" of Plaintiffs, such as the 800-plus BlackRock Plaintiffs, could be aggregated for purposes of fact testimony, including designating 30(b)(6) representatives.  Accordingly, the Deposition Protocol provided that the "number of depositions of witnesses associated with *Allianz* Plaintiffs" would be determined by later conferrals between the parties.  ECF 186 at 9.  The parties thus agreed that the per-plaintiff limits in the representative actions would not constrain depositions of the *Allianz* Plaintiffs.  The carveout clause for *Allianz* Plaintiffs also left intact the total cap of 130 depositions per side.

## II.    DEFENDANTS SHOULD HAVE DISCRETION TO ALLOCATE THEIR REMAINING 96 DEPOSITIONS ACROSS PLAINTIFFS' 1,000-PLUS KNOWLEDGEABLE WITNESSES

Consistent with the Deposition Protocol, Defendants have proposed that the "number of depositions" per "group" be the same for Plaintiffs and Defendants: a limit of up to 9, except where a party shows good cause to take more than 9.[1]  *See* ECF 186 at 9.  Defendants also offered to consider lower individual limits for Plaintiffs with fewer knowledgeable employees than most "groups."  Plaintiffs have rejected this proposal.  Instead, Plaintiffs seek a default cap of 3 depositions per Plaintiff "group"—the same limit for class plaintiffs—which would total only 42, and offered to deviate from this limit only in case-by-case negotiations.[2]  This approach would cut Defendants' allocation of 96 depositions under the heavily-negotiated Deposition Protocol by at least half.  The Court should reject Plaintiffs' position for four reasons.

*First*, Plaintiffs' proposal is another attempt to relitigate Judge Schofield's April 2020 order that Plaintiffs cannot rely on "representative" discovery because the *Allianz* case "is not a class action."  4/2/20 Tr: 8:22–9:5.  Instead, as Judge Schofield held, "each individual plaintiff has discovery obligations."  Judge Schofield's order confirms that the *Allianz* Plaintiffs must provide more depositions than class plaintiffs in the related actions—*i.e.*, more than 3 per group.

*Second*, in their 2019 interrogatory responses, Plaintiffs collectively disclosed *more than 1,000* employees with relevant knowledge during the relevant period.  Defendants have no desire

---

[1] This proposal reflects Defendants' understanding through discovery that the 14 Plaintiff "groups" may be aggregated for fact testimony, and will be capable of designating 30(b)(6) witnesses to testify on behalf of all individual "group" members.  To date, Plaintiffs have failed to confirm Defendants' understanding of 30(b)(6) witnesses.

[2] In accordance with Rule II(b) of Your Honor's practices, Defendants confirm that Anthony Alden, counsel for Plaintiffs, and Jason Kolbe, counsel for JPMorgan, held a meet and confer call at 5 p.m. EST on January 27 that lasted for 12 minutes.  The parties agreed during the call, and in subsequent correspondence, that they are at an impasse.

to take 1,000 depositions and do not seek to amend the remaining aggregate cap of 96 under the Deposition Protocol. But deposing a sampling of up to 96 individuals—roughly 10% of Plaintiffs' knowledgeable employees—would be reasonable and proportional to the needs of this action, because there are more than 1,000 Plaintiffs and they seek more than $1 billion in damages.

*Third*, Plaintiffs' approach will prevent Defendants from obtaining necessary fact testimony. Within many individual "groups," Plaintiffs (a) maintained multiple FX desks in various geographic locations and jurisdictions; (b) managed various groups of funds that traded FX for different strategic reasons; (c) acquired multiple predecessor entities with separate trading operations; (d) employed tens or hundreds of portfolio managers and traders who engaged in disputed FX transactions, many of whom came and went during the 11-year period at issue; (e) created research teams to evaluate the banks' pricing; and (f) deployed senior management to negotiate FX pricing with banks based on "scorecards," counterparty reviews, and other means. Defendants' continuing review of Plaintiffs' ongoing document productions and Defendants' own documents demonstrate that individuals from each of these entities, teams, and time periods are highly likely to have factual information that contradicts Plaintiffs' allegations. For example, among other things, Plaintiffs (a) studied FX pricing patterns and found "fierce competition" between banks (*see* ECF 929 at 2–3); (b) sought one-way and market pricing from Defendants (*i.e.*, no spread); (c) demanded and obtained multiple quotes from multiple banks and routinely told Defendants they received tighter spreads from a competing Defendant; (d) traded with many counterparties simultaneously (*i.e.*, sprayed the market); (e) often caused Defendants to lose money on FX trades in exchange for market share; and (f) shared and sought confidential and sensitive information regarding other market participants' activity and upcoming benchmark trades. Because of Plaintiffs' vast trading operations, the 11-year time period and the number of highly relevant current and former employees, 3 depositions per group (even with piecemeal additions) would come nowhere close to giving Defendants sufficient testimony on the core disputed issues.[3] This would be especially harmful because the size and sophistication of these Plaintiffs give rise to many defenses that were unavailable in the class cases. *See* ECF 929 at 2.

*Fourth*, as is contemplated by Deposition Protocol, Defendants should be entitled to allocate depositions across Plaintiffs in Defendants' discretion. Defendants have no intention of taking 9 depositions from every Plaintiff group, and will likely use some depositions for third parties. But Defendants are still evaluating which, and how many, individuals should be deposed for each Plaintiff, *e.g.*, based on Plaintiffs' recent document productions. Defendants should be permitted to distribute their remaining 96 depositions in good faith, based on the evidence, and in proportion to each Plaintiff's claims.

For the foregoing reasons, Defendants respectfully request an order enforcing the Deposition Protocol by confirming that Defendants may take up to 96 depositions with a default limit of 9 per Plaintiff "group," which may be exceeded only for good cause.

---

[3] Defendants have not burdened the Court with all relevant information on the size and structure of the Plaintiff groups, nor all the subjects of testimony to cover with their personnel. However, if the Court believes such information is necessary to decide this dispute, Defendants would happily provide further briefing on these fact-intensive issues.

Respectfully submitted,

*signature*

Tibor L. Nagy, Jr.
980 Madison Avenue, 2nd Floor
New York, New York 10075
Telephone: (212) 717-2900
Fax: (212) 717-8088
tibor@dnfllp.com

*Counsel for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC*

The Court carefully has reviewed the parties' submissions filed at ECF Nos. 992, 993 and 994, as well as the Stipulation and Order regarding Deposition Protocol filed at ECF No. 186 (the "Deposition Protocol"). In the Court's view, the Deposition Protocol does not fix "the total number of depositions of witnesses associated with *Allianz* Plaintiffs," but leaves that issue to be negotiated between Defendants and the *Allianz* Plaintiffs. (*See* Depo. Protocol ¶ 8.) The Court finds it inappropriate for it to impose a default limit of 9 depositions per Plaintiff group given the disparate facts and circumstances that exist among the Plaintiff groups. There plainly are some groups for which less than 9 depositions is appropriate, as Defendants themselves appear to acknowledge. (*See* Defs.' 1/28/22 Ltr., ECF No. 992, at 3 ("Defendants have no intention of taking 9 depositions from every Plaintiff group").) The parties are directed to meet and confer and to seek to agree on those Plaintiff groups for which less than 9 depositions shall be taken. If agreement cannot be reached as to any particular group, the parties shall set forth their respective positions in the joint letter due to be filed on February 22, 2022. (*See* 1/11/22 Mem. End., ECF No. 987.) The Clerk of Court is respectfully requested to terminate the gavel at ECF No. 992. SO ORDERED.
Dated: February 4, 2022  *signature*