UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Allianz Global Investors GmbH, et al., | Case No.: 1:18-cv-10364 |
| Plaintiffs, | |
| -against- | |
| Bank of America Corporation, et al., | |
| Defendants. | |

> **USDC SDNY**
> **DOCUMENT**
> **ELECTRONICALLY FILED**
> **DOC #:**_____
> **DATE FILED:**___04/14/2022___

## ~~[PROPOSED]~~ ORDER GRANTING UNOPPOSED MOTION FOR ISSUANCE OF A HAGUE CONVENTION REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO TAKE TESTIMONY OVERSEAS

The Court, having reviewed Plaintiffs' Unopposed Motion for Issuance of a Hague Convention Request for International Judicial Assistance to Take Testimony Overseas as well as papers in support, HEREBY ORDERS THAT:

1.     The Motion is GRANTED.

2.     The Request for Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters attached as Exhibit A to this order, is hereby issued as the Court's "Letter of Request" and is fully incorporated herein.

3.     The signed Order and the Letter of Request will be given to Quinn Emanuel Urquhart & Sullivan, LLP, who will cause both documents to be filed with the Ministere de la Justice, Direction des Affaires Civiles et du Sceau, Departement de l'entraide, du droit international prive et europeen, 13, Place Vendome, 75042 Paris Cedex 01, France.

4.     The Stipulation and Order of Confidentiality (ECF No. 157) in this action shall apply to the deposition, including the transcript and video.

5.      This Order, the deposition of Ilan Botbol or the terms of the Letter of Request (which are incorporated into this Order) shall not be construed or operate as a waiver of any argument, position, objection, allegation, or claim or defense of any party in the above-captioned action, or of the attorney-client privilege, the work product doctrine, or any other privileges, rights, protections, or prohibitions that may apply to that evidence under the laws of France, the United States of America, or the State of New York.

The Clerk of Court is respectfully requested to terminate the gavels at ECF Nos. 1049 and 1052.

IT IS SO ORDERED.

DATED: _____04/14/2022_____

THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Allianz Global Investors GmbH, et al., | Case No.: 1:18-cv-10364 |
| Plaintiffs, | |
| -against- | |
| Bank of America Corporation, et al., | |
| Defendant. | |

## UNOPPOSED REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Southern District of New York ("Southern District") presents its compliments to the appropriate judicial authority of France for assistance in obtaining evidence to be used at trial in the above-captioned civil proceeding before this Court. This request is made pursuant to Chapter I of the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters ("Hague Convention"). The Southern District is a court of law and equity and has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 15(a) and 26.

The Southern District has determined that it would further the interests of justice and that justice cannot be completely done between the parties without the testimony, under oath, of Ilan Botbol residing within your jurisdiction. The action involves claims of a conspiracy to violate the antitrust laws of the United States. Mr. Botbol is a former employee of Defendant Société Générale ("SocGen"). He was a Foreign Exchange ("FX") trader for SocGen, from ███████. He has knowledge relevant to this action as described in more detail below.

The testimony of Mr. Botbol is not available from any source within the jurisdiction of the Southern District, and cannot be obtained by any means other than pursuant to an order of an

appropriate judicial authority of France, compelling the witness to appear for examination. Mr. Botbol, a non-party to this action, resides at ███████████████████████████.

This request is made with the understanding that, and on the basis that any order made pursuant to this request: (1) will not require Mr. Botbol to commit any offense; and (2) will not violate the laws of civil procedure of any French court.

The Southern District, therefore, and in conformity with Article 3 of the Hague Convention, respectfully requests that you, in furtherance of justice by proper and usual process of your court, cause Mr. Botbol to appear before a judge authorized to administer oaths and to take testimony, in accordance with articles 735 et seq. of the French Code of Civil Procedure, at a precise time to be fixed by said judge, and answer on his oath or affirmation questions and cross-questions, and that the Court will direct his deposition to be transcribed and recorded by video, and the transcript and video be sent to counsel for the parties in the action, who so request a copy. The Southern District stands ready to provide similar judicial assistance to judicial authorities in France when required.

Finally, this Court requests from the judicial authority of France that this Letter of Request and its exhibits, and the declaration of Daniel L. Brockett dated April 1, 2022, and its exhibits be closed to public inspection to the maximum extent permitted by your laws because they are subject to a Protective Order in this case and have been filed under seal with this Court. *See* Stipulation and Order of Confidentiality ("Protective Order") dated February 11, 2019, attached hereto as Exhibit 1.

THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK THEREFORE MAKES THE FOLLOWING REQUEST:

1. **Sender**

   The Honorable Stewart D. Aaron

United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007
United States of America

**2.      Central Authority of the Requested State**

Ministere de la Justice
Direction des Affaires Civiles et du Sceau
Departement de l'entraide, du droit international prive et europeen
13, Place Vendome
75042 Paris Cedex 01
France

**3.      Person to whom the executed request is to be returned**

The Honorable Stewart D. Aaron
United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007
United States of America

and

Johanna Y. Ong
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, Ca 90017
United States of America

**4.      Specification of the date by which the requesting authority requires receipt of the response to the Request for International Judicial Assistance ("Request for Assistance")**

The requesting authority would greatly appreciate a response to the Request for Assistance within 21 days or as soon thereafter as is practicable.

**5.**
**a.      Requesting Judicial Authority**

United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse

500 Pearl Street
New York, NY 10007
United States of America

    **b.**    **To the competent authority of**
France

    **c.**    **Name of the case and any identifying number**
*Allianz Global Investors GmbH, et al., v. Bank of America Corporation, et al.,* Case No. 1:18-cv-10364-LGS (S.D.N.Y.)

*This U.S. litigation has given rise in the past to a Hague Chapter II request that was approved by the Ministry of Justice by letter dated September 21, 2020, case number BDIP/174OP2020.*

**6.**    **Names and addresses of the parties and their representatives**

    **a.**    **Plaintiffs**
Allianz Global Investors U.S. LLC; AllianzGI NFJ All-Cap Fund, a series of Allianz Funds; Allianz AGIC Global Fund, a series of Allianz Funds; Allianz AGIC International Growth Fund, a series of Allianz Funds Multi-Strategy Trust; AllianzGI AGIC Small to Mid Cap Growth Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz OCC Equity Premium Strategy Fund, a series of Allianz Funds; Allianz NACM Global Equity 130/30 Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz PEA Value Fund, a series of Allianz Funds; Allianz AGIC International Fund, a series of Allianz Funds; Allianz AGIC International Growth Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz AGIC International Growth Opportunities Fund, a series of; Allianz AGIC Pacific Rim Fund, n/k/a AllianzGI Emerging Markets Opportunities Fund, a series of Allianz Funds; Allianz AGIC Target Fund, n/k/a AllianzGI Mid-Cap Fund, a series of Allianz Funds; Allianz Global Investors Capital International Systematic Fund LLC; Allianz OCC International Equity Fund, a series of Allianz Funds; Allianz OCC Renaissance Fund, a series of Allianz Funds; Allianz OCC Value Fund, a series of Allianz Funds; Allianz RCM All Alpha Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz RCM All Horizons Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz RCM Biotechnology Fund add Global Health Sciences, n/k/a AllianzGI Health Sciences Fund, a series of Allianz Funds; Allianz RCM BRIC Stars Fund, n/k/a Allianz Emerging Markets Equity Fund; Allianz RCM Disciplined International Equity Fund, a series of Allianz Funds; Allianz RCM Disciplined International Equity Fund - Fgn.Equity; Allianz RCM Financial Services Fund, a series of Allianz Funds; Allianz RCM Global Small Cap Fund, n/k/a AllianzGI Global-Small Cap Fund, a series of Allianz Funds; ALLIANZ RCM GLOBAL SUSTAINABILITY FUND, n/k/a AllianzGI Global Sustainability Fund, a series of Allianz Funds Multi-Strategy Trust; Allianz RCM International Opportunities Fund, a series of Allianz Funds

Multi-Strategy Trust; Allianz RCM Large-Cap Growth Fund, n/k/a AllianzGI Focused Growth Fund, a series of Allianz Funds; Allianz RCM Mid-Cap Fund, n/k/a AllianzGI Mid-Cap Fund, a series of Allianz Funds; AllianzGI Emerging Markets Consumer Fund, n/k/a AllianzGI Emerging Market Consumer Fund, a series of Allianz Funds Multi-Strategy Trust; AllianzGI Emerging Markets Opportunities Fund, a series of Allianz Funds; AllianzGI Emerging-Markets Small Cap, a series of Allianz Funds Multi-Strategy Trust; AllianzGI Global Equity & Convertible Income Fund, n/k/a AllianzGI Equity & Convertible Income Fund; AllianzGI Global Managed Volatility Fund, a series of Allianz Funds Multi-Strategy Trust; AllianzGI Global Natural Resources Fund, a series of Allianz Funds; AllianzGI Global Small-Cap Opportunities Portfolio, a portfolio of AllianzGI Institutional Multi-Series Trust; AllianzGI Global Small-Cap Fund, a series of Allianz Funds; AllianzGI Health Sciences Fund, a series of Allianz Funds; AllianzGI Income & Growth Equity Fund, a series of Allianz Funds; AllianzGI International & Premium Strategy Fund; AllianzGI International Managed Volatility Fund , a series of Allianz Funds; AllianzGI Mid-Cap Fund, a series of Allianz Funds; NFJ Dividend, Interest & Premium Strategy Fund; AllianzGI NFJ International Small-Cap Value Fund; AllianzGI NFJ International Value Fund, a series of Allianz Funds; AllianzGI NFJ Mid-Cap Value Fund, a series of Allianz Funds; Nicholas-Applegate Emerging Markets Fund, n/k/a AllianzGI Emerging Markets Opportunities Fund, a series of Allianz Funds; Nicholas-Applegate Global Select Fund, a series of Allianz Funds; Nicholas-Applegate International Growth Fund, n/k/a AllianzGI International Growth Fund, a series of Allianz Funds Multi-Strategy Trust; Nicholas-Applegate Small Cap Emerging Countries Series LLC; AllianzGI NFJ Small-Cap Value Fund, a series of Allianz Funds; RCM Global Equity Fund, a series of Allianz Funds; RCM International Small Cap Fund, n/k/a AllianzGI International Small-Cap Fund, a series of Allianz Funds Multi-Strategy Trust; RCM Strategic Growth Fund, n/k/a AllianzGI Focused Growth Fund, a series of Allianz Funds; The Korea Fund, Inc.; Allianz Global Investors GmbH; Allianz Global Investors Fund Société d'Investissement à Capital Variable (f/k/a Dresdner Global Strategies Fund Société d'Investissement à Capital Variable; Allianz European Pension Investments Société d'Investissement à Capital Variable; Allianz Global Investors Taiwan Limited; Anchorage Capital Group, L.L.C.; Andra AP-fonden; BlackRock, Inc.; BlueCrest Capital Management Limited (f/k/a BlueCrest Capital Management LLP); Brevan Howard Asia Master Fund Limited; California State Teachers' Retirement System; PFA Pension Forsikringsaktieselskab and PFA Kapitalforening; Pacific Investment Management Company LLC; Portigon AG; Pension Reserves Investment Management Board of Massachusetts; SEI Trust Company.

**b.**   **Names and addresses of Plaintiffs' representatives**
Daniel L. Brockett

Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
United States of America

Johanna Y. Ong
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
United States of America

c.    **Defendants**

Bank of America Corporation; Bank of America, N.A.; Merrill Lynch,
Pierce, Fenner & Smith Inc.; Barclays Bank PLC; Barclays PLC; Barclays
Capital, Inc.; BNP Paribas Group; BNP Paribas USA, Inc.; BNP Paribas
S.A.; BNP Paribas Securities Corp.; Citigroup, Inc.; Citibank, N.A.;
Citigroup Global Markets, Inc.; Credit Suisse AG, Credit Suisse Group AG;
Credit Suisse Securities (USA) LLC; Deutsche Bank AG;    Deutsche
Bank Securities Inc.; HSBC Bank PLC; HSBC North America Holdings
Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan
Chase & Co.; JP Morgan Chase Bank, N.A.; J.P. Morgan Securities LLC;
Morgan Stanley; Morgan Stanley & Co., LLC; Morgan Stanley & Co.
International PLC; The Royal Bank of Canada; Royal Bank of Scotland
PLC; NatWest Markets Securities Inc.; SG Americas Securities LLC;
Société Générale S.A.; Standard Chartered Bank; UBS AG; UBS Securities
LLC; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co. LLC.

d.    **Names and addresses of Defendants' representatives**
Adam S. Hakki
Richard F. Schwed
Jeffrey J. Resetarits
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

*Counsel for Bank of America Corporation; Bank of America, N.A.; Merrill
Lynch, Pierce, Fenner & Smith Inc*

David C. Esseks
Laura R. Hall
Rebecca Ann Cecchini
Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020

Joshua A. Goldberg
Alejandro H. Cruz
Dakotah Burns
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

*Counsel for BNP Paribas (identified in the Third Amended Complaint as
"BNP Paribas Group" and "BNP Paribas S.A."); BNP Paribas USA, Inc.;
BNP Paribas Securities Corp[1]*

Matthew A. Schwartz
Christopher J. Dunne
Mark A. Popovsky
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

*Counsel for Barclays Bank PLC; Barclays PLC; Barclays
Capital, Inc.*

Andrew A. Ruffino
Covington & Burling LLP
620 Eighth Avenue
New York, New York 10018

Andrew D. Lazerow
Covington & Burling LLP
850 Tenth Street, N.W.
Washington, D.C. 20001

*Counsel for Citigroup Inc.; Citibank, N.A.;
Citigroup Global Markets Inc.*

David G. Januszewski
Herbert S. Washer
Elai Katz
Jason M. Hall
Edward Moss
Cahill Gordon & Reindell LLP
32 Old Slip
New York, New York 10005

---

[1] Allen & Overy LLP does not represent Defendants BNP Paribas, BNP Paribas USA, Inc., and
BNP Paribas Securities Corp. with respect to claims by Claimants affiliated with BlackRock, Inc.

*Counsel for Credit Suisse AG, Credit Suisse*
*Group AG; Credit Suisse Securities (USA) LLC*

Joseph Serino, Jr.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022

G. Patrick Montgomery
King & Spalding LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006

*Counsel for Deutsche Bank AG; Deutsche Bank Securities Inc.*

Rishi Zutshi
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

*Counsel for The Goldman Sachs Group, Inc.; Goldman, Sachs & Co. LLC*

Gregory T. Casamento
Locke Lord LLP
3 World Financial Center
New York, New York 10281

Roger B. Cowie
Locke Lord LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201

J. Matthew Goodin
Julia C. Webb
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

*Counsel for HSBC Bank PLC; HSBC North America*
*Holdings Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.*

Boris Bershteyn
Skadden Arps, Slate, Meagher & Flom LLP
One Manhattan West

New York, New York 10001

Gretchen Wolf
Skadden Arps, Slate, Meagher & Flom LLP
155 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606

Paul M. Kerlin
Skadden Arps, Slate, Meagher & Flom LLP
1440 New York Avenue N.W.
Washington, DC 20005

Tibor L. Nagy, Jr.
Jason Kolbe
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, New York 10075

*Counsel for JPMorgan Chase & Co.; JP Morgan Chase Bank, N.A.;
J.P. Morgan Securities LLC[2]*

Jonathan Moses
Andrew J.H. Cheung
Daniel J. Brenner
Justin L. Brooke
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

*Counsel for Morgan Stanley; Morgan Stanley & Co., LLC; Morgan
Stanley & Co. International PLC*

Paul S. Mishkin
Adam G. Mehes
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

*Counsel for The Royal Bank of Scotland plc (n/k/a NatWest Markets Plc);
NatWest Markets Securities Inc.*

James P. McLoughlin, Jr.

---

[2] Skadden Arps, Slate, Meagher & Flom LLP does not represent JPMorgan Chase & Co., JP Morgan Chase Bank, N.A. and J.P. Morgan Securities LLC with respect to claims by BlackRock, Inc. or BlackRock-related entities listed in Appendix C of the *Allianz* complaint.

Mark A. Nebrig
Joshua D. Lanning
Moore and Van Allen PLLC
100 N. Tyron Street, Suite 4700
Charlotte, North Carolina 28202

*Counsel for RBC Capital Markets LLC; The Royal
Bank of Canada*

James R. Warnot, Jr.
Adam S. Lurie
Patrick C. Ashby
Nicole E. Jerry
Linklaters LLP
1290 Avenue of the Americas
New York, New York 10104

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
Victoria D. Whitney
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020

*Counsel for Société Générale[3]*

Lewis S. Wiener
Ronald W. Zdrojeski
Meghana D. Shah
Eversheds Sutherland LLP
1114 Avenue of the Americas
New York, New York 10036

Benjamin A. Fleming
Hogan Lovells US LLP
390 Madison Ave.
New York, NY 10017

Lisa J. Fried
Marc J. Gottridge
Herbert Smith Freehills New York LLP
450 Lexington Avenue

---

[3]     Linklaters LLP does not represent Société Générale with respect to claims by BlackRock, Inc. or BlackRock-related entities listed in Appendix C of the *Allianz* complaint.

14th Floor
New York, NY 10017

*Counsel for Standard Chartered Bank*

Eric J. Stock
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

Amy Feagles
Melanie L. Katsur
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Counsel for UBS AG; UBS Securities LLC*

7.

### a.     Nature and purpose of the proceedings:

The Plaintiffs in this case allege that the Defendant banks (including SocGen) engaged in a conspiracy to fix prices in the foreign exchange ("FX") market in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. A copy of Plaintiffs' Third Amended Complaint ("Complaint"), dated July 28, 2020, is attached as Exhibit 2 hereto. The nature of the action is summarized at Complaint, ¶¶ 1-13. Plaintiffs seek damages and other relief for injury caused by Defendants' wrongdoing. Complaint at pp. 388-89.

### b.     Summary of complaint

Plaintiffs allege, *inter alia*, that the Defendants conspired to fix FX prices and otherwise manipulate the FX market from a period beginning January 1, 2003 through December 31, 2013, in violation of U.S. antitrust laws. Specifically, Plaintiffs allege that Defendants' conspiracy encompassed: (a) coordinating and fixing bid/ask spreads quoted to customers; (b) manipulating FX benchmark rates, such as the WM/Reuters and ECB benchmark rates; and (c) other wrongful conduct that improperly manipulated the FX market. *See e.g.,* Complaint, ¶¶ 1-13, 465-525, 583-

619.  Plaintiffs further allege that Defendants used electronic chat rooms with names such as "The Cartel," "The Mafia," "The Club," "The Bandits' Club," "The Dream Team," and "One Team, One Dream" in furtherance of the conspiracy. Complaint, ¶ 3.

### c.   Summary of defense

Defendants deny they entered into any agreements to fix prices or otherwise manipulate the FX market. Defendants moved to dismiss Plaintiffs' claims on various legal grounds, including failing to state a claim for relief.  The Court granted in part and denied in part Defendants' motion.

### 8.

### a.   Evidence to be obtained

This Court respectfully requests that the appropriate judicial authority in France cause the appropriate orders to be issued to direct the deposition, under oath, of Mr. Botbol to be used at trial in these proceedings.

### b.   Purpose of the evidence or judicial act sought

At trial, Plaintiffs must prove the existence of an agreement and/or conspiracy to fix FX spreads and manipulate benchmark rates. Plaintiffs must demonstrate that the conspiracy occurred in or affected commerce in the United States of America. Plaintiffs must demonstrate that the conspiracy proximately caused injury to Plaintiffs.

Mr. Brockett has satisfied this Court that Mr. Botbol may have personal knowledge of matters material and relevant to the matters at issue in the proceedings for the period of 2005 through 2013. As set forth below, the evidence sought by Plaintiffs relates to the matters in question. Because Mr. Botbol resides outside the subpoena power of this Court, and therefore cannot be compelled to testify at trial, Plaintiffs seek his deposition testimony to prove their claims at trial.

Mr. Botbol's background and employment as a former FX trader for Defendant SocGen, as well as his general knowledge of the FX market, are relevant to establishing the bases for Mr. Botbol to testify about mechanics of the alleged conspiracy. Letter of Request, Section 10, Topic A. Mr. Botbol's testimony is also relevant to Plaintiffs' allegations that FX traders had strong social and professional ties with traders at other banks, creating opportunities for collusion. *Id.*

Mr. Botbol's testimony regarding his participation in multi-bank chat rooms and communications with FX traders from other Defendants may be relevant to prove the alleged conspiracy. *Id.* at Topics C-E. Plaintiffs have alleged that Defendants communicated directly with each other via multi-bank chat rooms to share confidential customer information and coordinate trading activity with competitors to manipulate spreads, prices and benchmark rates. Plaintiffs allege that the names for these chat rooms including "The Cartel" or "The Mafia" support the inference they were used for anticompetitive purposes. *Id.* at Topics C-E. Thus, Mr. Botbol's testimony regarding his alleged participation in multi-bank chat rooms may also be relevant to Plaintiffs' claims.

Specifically, Mr. Botbol is alleged to have been an active participant in multi-bank chat rooms with FX traders at other Defendant banks, including but not limited to, ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████

Mr. Botbol's testimony regarding his chat room communications may be relevant to demonstrate his knowledge of and participation in the alleged conspiracy, including the meanings of communications in which he was a participant and how he and others in the chatroom used that information to trade FX on behalf of their respective banks. Mr. Botbol's testimony is also necessary to explain at trial communications through other media for which written evidence does not exist, such as phone calls and text messages.

Mr. Botbol's testimony regarding SocGen's policies on electronic communications, information sharing, and antitrust compliance is also relevant to Plaintiffs' claims. *Id.* at Topics F-G. Plaintiffs intend to prove that Defendants lacked compliance measures and/or knew of and either failed to prevent or encouraged violations of compliance policies. Plaintiffs also intend to prove that Defendants' own policies acknowledge that sharing confidential customer information and engaging in coordinated trading with competitor banks was improper and constituted market manipulation. Accordingly, Mr. Botbol's testimony concerning SocGen's policies, the enforcement (or lack thereof) of those policies, and his knowledge of FX traders' compliance (or lack thereof) with those policies is also relevant to establishing Plaintiffs' claims.

Mr. Botbol's testimony regarding his compensation and SocGen's profit and loss from FX trading may be relevant to show a motive to conspire both at the corporate and individual trader level. *Id.* at Topics H-I. This testimony also bears on alleged injury to Plaintiffs. Mr. Botbol's testimony regarding his knowledge of SocGen's algorithms is relevant to the interrelationship of FX prices between trading platforms. *Id.* at Topic I.

Finally, Plaintiffs allege that Mr. Botbol's testimony regarding any investigation of his or other FX traders' conduct in the FX market during the alleged conspiracy period is relevant to establish liability at trial. *Id.* at Topic J.

9.	**Identity of any person to be examined**

Ilan Botbol



**Name and address of witness's counsel**

Unknown

10.	**Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

A.	Mr. Botbol's educational background, employment history, professional qualifications, cooperation or separation agreements, relationships with other traders and personal preparation for the deposition (to include any contacts the witness may have had with the parties, their lawyers, and other witnesses, but excluding any privileged content of such communications).

B.	Mr. Botbol's knowledge of the foreign exchange market, including but not limited to, his knowledge of bid/ask spreads, benchmark rates, the relationship between spreads and prices, the different FX instruments and their relationship to each other, and the market share of SocGen and its competitors.

C.	Mr. Botbol's knowledge of communications with each co-Defendant from 2005 through 2013 regarding any of matters listed in a-e below (but Mr. Botbol shall not be required to state what documents, other than any shown to him during the deposition, are or have been in his possession, custody, or control, the term "documents," including, without limitation, chat room discussions on a screen):

	a. imparting to or receiving from another Defendant confidential client information;

	b. front running client orders;

	c. triggering of stop loss orders;

	d. coordinating or manipulating bid-ask spreads quoted to customers; and

	e. manipulating foreign exchange benchmark rates such as the WM/Reuters fix, and the ECB rate.

D.	Mr. Botbol's knowledge regarding the use of chat rooms to trade foreign exchange and/or communicate with other competing banks (but Mr. Botbol shall not be required to

state what documents, other than any shown to him during the deposition, are or have been in his possession, custody, or control, with the term "documents," including, without limitation, chat room discussions on a screen).

E.      Mr. Botbol's knowledge regarding documents shown to him during the deposition, including: (i) chat room and email discussions from 2005 through 2013 which he participated in or observed concerning matters set out at C a-e above, the meaning of such communications, the ethics of such discussions or behavior or possible regulators' interest in such discussions or behaviors; and (ii) communications from 2005 through 2013 within SocGen to which he was a party concerning matters set out at (i).

Documents are not to be shown to Mr. Botbol during the deposition unless either: (a) provided to him or his counsel, with copies to counsel for all parties intending to attend the deposition, 14 days before his deposition; or (b) with the permission of the Examiner on application to him by the party wishing to show the documents.

F.      Mr. Botbol's knowledge of, training in, and compliance with SocGen's corporate policies regarding: (a) communications with other banks engaging in foreign exchange trading; (b) confidentiality of customer information, and (c) antitrust and competition.  Mr. Botbol's knowledge of the enforcement (or lack of enforcement) of such policies and compliance (or lack of compliance) with such policies by other traders at SocGen.

G.      Mr. Botbol's performance reviews at SocGen including communications with SocGen regarding his potential or alleged noncompliance with corporate policies from at least 2005 through 2013 and any disciplinary action taken against Mr. Botbol.

H.      Mr. Botbol's compensation and profits and losses as well as his knowledge of the profits and losses of SocGen from foreign exchange trading from 2005 through 2013.

I.      Mr. Botbol's knowledge of any algorithms used by SocGen or its competitors for foreign exchange trading from at least 2005 through 2013.

J.      Mr. Botbol's knowledge of any investigations, guilty pleas, and/or regulatory fines regarding SocGen's participation in the foreign exchange market from at least 2005 through 2013.

**11.     Documents or other property to be inspected**

Plaintiffs and this Court are not requesting that Mr. Botbol produce any documents.

**12.     Any requirement that the evidence be given on oath or affirmation and any special form to be used**

The examination of the witness identified at Section 9 above will be taken under oath

before a judge appointed by the French court, in accordance with article 735 et seq. of the French

Code of Civil Procedure and Chapter I of the Hague Convention,empowered to administer oaths and take testimony. This Court will be content if the requested Court appoints a duly qualified and authorized Examiner.

This Court further requests that you, by your proper and usual process, require that the testimony given during the above-described deposition be given under the following oath or affirmation: "I [deponent] swear that the testimony that I am about to give is the truth, the whole truth and nothing but the truth, so help me God" or "I [deponent] swear that the testimony that I am about to give is the truth, the whole truth and nothing but the truth."

**13. Special methods or procedure to be followed**

The examination of the individual identified in Section 9 above will be taken under the Federal Rules of Civil Procedure, except to the extent that any such procedure is incompatible with French law. The examinations and cross-examinations shall be the same as though the deponent were testifying at trial. The examinations and cross-examinations will be recorded stenographically and by videotape. The examination will be conducted at such time and date to be agreed with by the witness.  If the witness testifies in French, an English interpreter will be provided to ensure that the parties will receive an accurate English language transcript of the deposition.  If permitted under French law, access to the deposition of Mr. Botbol shall be limited to parties and counsel covered by the protective order applicable in this matter, to the exclusion of the general public.

This Court respectfully requests that the judicial authority in France permit the examination of Mr. Botbol to be conducted in English, through an interpreter as may be needed, by (i) attorneys for the Plaintiffs or other duly authorized representatives, qualified to practice law in United States and/or in France, nominated by the Plaintiffs, and that Plaintiffs be permitted to cross-examine Mr.

Botbol; (ii) the witness's counsel; and (iii) attorneys for SocGen, who may cede up to one hour of their examination time to allow questioning by counsel for any other Defendant.

14.     **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**

Johanna Y. Ong
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
United States of America

Counsel for Plaintiffs will promptly send notice to counsel for all parties to the action.

15.     **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request**

Omitted.

16.     **Specification of privilege or duty to refuse to produce documents under law of the State of origin**

Neither this request for international judicial assistance, the transmission of documents pursuant to the Hague Convention, nor any examination, including without limitation, this request and all transcripts of Mr. Botbol's examination shall waive, or be deemed or argued to have waived, the attorney-client privilege, the work product doctrine, or any other privileges, rights, protections, or prohibitions that may apply to that evidence under the laws of France, the United States of America, or the State of New York, including the privilege against self-incrimination under the Fifth Amendment of the U.S. Constitution.

The examination of Mr. Botbol will not be oppressive. Relevant criminal investigations in the United States are closed and/or concluded. Moreover, Mr. Botbol's deposition will proceed under the terms of the Protective Order and, therefore, will be given confidential treatment in connection with this litigation.

The Fifth Amendment of the U.S. Constitution affords both criminal defendants and civil litigants a privilege against compelled testimony that may later be used against them in criminal proceedings. Mr. Botbol will be given the opportunity to exercise his rights under the Fifth Amendment of the U.S. Constitution at his deposition. This Court desires that Mr. Botbol be compelled to attend even if he should express in advance an intention to refuse to answer questions, in reliance on his Fifth Amendment rights. Upon attending, he may choose to provide useful answers. In any event, Mr. Botbol's refusal to answer certain questions may be of value in this action. In civil litigation in the United States of America, the fact-finder may draw adverse inferences against a party based on a non-party witness' invocation of the Fifth Amendment. Therefore, it is possible that Mr. Botbol's refusal to answer questions may be imputed to SocGen and/or other alleged co-conspirators to create an inference of liability under certain circumstances. However, that refusal could not be used against him in a U.S. criminal proceeding.

17.     **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

Plaintiffs.

Date of Request:     04/14/2022
Signature and Seal of the Requesting Authority:

Honorable Stewart D. Aaron
United States Magistrate Judge