October 24, 2022


*By ECF*

The Hon. Stewart D. Aaron
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: ***Allianz, et al. v. Bank of America Corp. et al., 18-cv-10364-LGS***

Dear Judge Aaron:

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, defendants request that the Court compel plaintiffs to produce a sample of trade confirmations for FX transactions that plaintiffs claim were with a defendant, but for which defendants can find no record in their trading data.[1] For more than a year, plaintiffs have refused to produce any trade confirmations, even though defendants have repeatedly narrowed their request and are currently seeking only 31 trade confirmations (a tiny sample in a case involving millions of FX transactions). The Court should order plaintiffs to produce the 31 trade confirmations within two weeks to avoid any disruption to the expert discovery schedule.[2]

As background, defendants served document requests three and half years ago that sought production of plaintiffs' trade confirmations. During the meet and confer process, the parties agreed (while reserving their rights) that neither plaintiffs nor defendants needed to produce trade confirmations for FX transactions when plaintiffs and defendants were the trade counterparties. In September 2021, defendants notified plaintiffs that defendants were unable to find in their own trade data hundreds of thousands of FX transactions that plaintiffs claim were with a defendant and for which plaintiffs claim damages in this case. In an effort to resolve the dispute, defendants asked plaintiffs to produce a small sample of trade confirmations and explained that the confirmations might help defendants either find the questioned FX transactions in defendants' data or confirm that the plaintiffs' transactions were not with a defendant or not otherwise at issue in this case.

Plaintiffs responded with delay and obfuscation. First, plaintiffs stated they would not look for any of the trade confirmations unless defendants first confirmed that they had searched for the documents and could not find them. Defendants complied promptly. Next, plaintiffs said that they would not produce the trade confirmations because certain defendants were still producing supplemental trade data and defendants may be able to find the unmatched trades in the

---

[1] This case is limited to FX transactions between plaintiffs and defendants because Judge Schofield granted defendants' motion to dismiss with regard to FX transactions between plaintiffs and non-defendants. (ECF No. 406 at 40).

[2] The 31 trade confirmations are a random sample of FX transactions between a cross section of plaintiffs and defendants during the relevant time period.

supplemental data.  Hoping to avoid bringing another dispute to the Court, defendants agreed to wait.  When the trades were not in the supplemental production, defendants renewed their request, but plaintiffs again refused to produce the trade confirmations.

Fact discovery ends next week and defendants cannot wait any longer for evidence on trades that plaintiffs argue are part of their claim.  Defendants' request is clearly relevant to this litigation because it will help advance the process of confirming whether FX transactions are in scope, and plaintiffs cannot reasonably argue that defendants' request for 31 trade confirmations is unduly burdensome.  We ask the Court order plaintiffs to produce the trade confirmations within two weeks.

Plaintiffs may argue that the trade confirmations are somehow connected to their contention interrogatories to defendants (ECF No. 1173), or that defendants promised to identify all unmatched trades before plaintiffs would have to produce any trade confirmations.  To the contrary, defendants are requesting a sample of trade confirmations to <u>narrow</u> the transactions that plaintiffs claim were with a defendant, but for which defendants can find no record in their trading data.  The hope is that by inspecting a sample of trade confirmations, defendants will identify transaction information not captured in the plaintiffs' or defendants' FX trading data, and that this information will either (a) help defendants find the transactions in their own data or (b) confirm that certain transactions are not in scope.  It is also defendants' hope that the lessons learned from analyzing the sample trade confirmations will apply more broadly to the hundreds of thousands of unmatched trades.

It makes no sense, as plaintiffs propose, for defendants to provide plaintiffs with a "final" list of unmatched trades before plaintiffs provide a sample of trade confirmations.  Contrary to plaintiffs' assertion, defendants have already provided plaintiffs with a preliminary list of unmatched trades and plaintiffs have not indicated that they were able to find the trades in defendants' data—which plaintiffs have had for years—or to identify any information that would assist with the matching process.  On the other hand, after defendants review the trade confirmations and hopefully reduce the number of unmatched trades, defendants would be in a position to identify the remaining trades that defendants have determined are unmatched.

Respectfully submitted,

SHEARMAN & STERLING LLP

By: */s/ Jeffrey J. Resetarits*
Adam S. Hakki
Richard F. Schwed
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
ahakki@shearman.com
rschwed@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendants Bank of America*
*Corporation, Bank of America, N.A. and*
*Merrill Lynch, Pierce, Fenner & Smith*
*Incorporated*